IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK A. HANSEN, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-05-3437 |
| | § | |
| AON RISK SERVICES OF TEXAS, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |

# DEFENDANT AON RISK SERVICES OF TEXAS, INC.'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

Kerry E Notestine (Attorney-in-Charge)
State Bar No. 15116950
Federal I.D. No. 2423
LITTLER MENDELSON
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX 77010
713.951.9400 (Telephone)
713.951.9212 (Fax)

ATTORNEYS FOR DEFENDANT, AON RISK
SERVICES OF TEXAS, INC.

*Of Counsel*:

Nitin Sud
State Bar No. 24051399
Federal I.D. No. 611307
LITTLER MENDELSON
A Professional Corporation
1301 McKinney Street
Suite 1900
Houston, TX 77010
713.951.9400 (Telephone)
713.951.9212 (Fax)

**TABLE OF CONTENTS**

PAGE

I.  BACKGROUND FACTS ...........................................................................................1

    A.  Hansen's Hire and Initial Position ..........................................................1

    B.  Hansen as Director Placement Services Unit...........................................2

    C.  Hansen's Demotion...................................................................................3

    D.  Hansen's Termination...............................................................................4

    E.  Hansen's Charge of Discrimination and Subsequent Lawsuit .................4

II.  SUMMARY OF ARGUMENT ....................................................................................5

III.  ARGUMENT AND AUTHORITIES ............................................................................6

    A.  Hansen's Claims of Unlawful Demotion and Failure to Transfer
        Should be Dismissed Because he Failed to Comply with the Required
        Procedural Prerequisites under Title VII and Chapter 21 of the Texas
        Labor Code by Not Filing a Timely Charge of Discrimination. ..............6

    B.  Hansen's Claims of Unlawful Demotion, Failure to Transfer, and
        Discharge Should be Dismissed Because he Failed to Comply with
        the Required Procedural Prerequisites under Chapter 21 of the Texas
        Labor Code by Not Filing his Lawsuit within 60 Days of the Receipt
        of his Right to Sue Letter. ........................................................................7

    C.  Aon is Entitled to Summary Judgment on the Merits of Hansen's
        Claims of Unlawful Gender Discrimination. ...........................................7

        1.  Hansen cannot establish a prima facie case. ..............................8

        2.  Aon based its adverse employment decisions on legitimate,
            nondiscriminatory reasons. ..........................................................9

            a.  Demotion. ........................................................................9

            b.  Failure to transfer. ........................................................10

            c.  Termination. ..................................................................10

        3.  Hansen cannot demonstrate pretext or unlawful intent in
            Aon's decisions. .........................................................................11

i

a. Aon did not unlawfully discriminate against Hansen because of his gender. ...................................................11

b. Hansen cannot demonstrate that Aon's reasons for its decisions to demote, refuse to transfer, and terminate are false. ...................................................12

c. Hansen cannot establish unlawful intent to discriminate based on gender. ...................................................14

4. Aon is entitled to judgment based on an affirmative defense. .................17

D. In the Alternative, Hansen's Jury Demand is Not Timely. ...................................17

IV. CONCLUSION AND PRAYER ...................................................18

# TABLE OF AUTHORITIES

## CASES

PAGE

*Allied Elec. Serv., Inc. v. Room Serv. TV, Inc.*,
    1995 U.S. Dist. LEXIS 15283 (D.N.H. 1995) ........................................................18

*Bauer v. Albermarle Corp.*,
    169 F.3d 962 (5th Cir. 1999) ..................................................................................7

*Bienkowski v. American Airlines, Inc.*,
    851 F.2d 1503 (5th Cir. 1988) ..............................................................................13

*Blow v. City of San Antonio*,
    236 F.3d 293 (5th Cir. 2001) ..................................................................................8

*Boyd v. State Farm Ins. Co.*,
    158 F.3d 326 (5th Cir. 1998) ..................................................................................8

*Brown v. CSC Logic, Inc.*,
    82 F.3d 651 ...................................................................................................12, 15

*Farias v. Bexar County Board of Trustees*,
    925 F.2d 866 (5th Cir. 1991) ................................................................................18

*Faruki v. Parsons S.I.P., Inc.*,
    123 F.3d 315 (5th Cir. 1997) ................................................................................12

*Goff v. Continental Oil Co.*,
    678 F.2d 593 (5th Cir. 1982) ................................................................................16

*Huckabay v. Moore*,
    142 F.3d 233 (5th Cir. 1998) ..................................................................................6

*Krystek v. Univ. of So. Miss.*,
    164 F.3d 251 (5th Cir. 1999) ..........................................................................14, 15

*Levias v. Texas Dept. of Criminal Justice*,
    352 F. Supp. 2d 751 (S.D. Tex. 2004) ..................................................................14

*Molnar v. Ebasco Constructors, Inc.*,
    986 F.2d 115 (5th Cir. 1993) ................................................................................13

*O'Brien v. Lucas Assoc. Pers., Inc.*,
    127 Fed. Appx. 702 (5th Cir. 2005) ......................................................................12

*Rosales v. TXI Operations,*
2005 U.S. Dist. LEXIS 3977 (N.D. Tex. March 14,
2005) ...........................................................................................................8

*Sabzevari v. Reliable Life Ins. Co.,*
2006 WL 1663715 (S.D. Tex. June 15, 2006) .......................................................6

*Septimus v. Univ. of Houston,*
399 F.3d 601 (5th Cir. 2005) ...............................................................................13

*Taylor v. Books A Million, Inc.,*
296 F.3d 376 (5th Cir. 2002) ...............................................................................7

*Varela v. Nat'l Reinsurance Corp.,*
1998 WL 440038 (N.D. Tex. 1998) .....................................................................18

## STATUTES, RULES AND REGULATIONS

42 U.S.C. § 2000e-5(g)(2)(B) ...........................................................................17

42 U.S.C. § 2000e-2(m) ....................................................................................17

Federal Rule of Civil Procedure 38 ...................................................................17

Federal Rule of Civil Procedure 56 ...................................................................1

## EXHIBIT LIST

EXHIBIT NO.

Excerpts from Mark Hansen Deposition ........................................................................1

Declaration of Ernie Joyner and Attachments ...............................................................2

Declaration of Victoria McDonough and Attachments ...................................................3

Declaration of Donna Parsley and Attachments .............................................................4

Texas Workforce Commission's May 13, 2005 Right to Sue Letter .................................5

Equal Employment Opportunity Commission's July 8, 2005 Right to Sue Letter.............6

*Sabzevari v. Reliable Life Ins. Co.*, 2006 WL 1663715 (S.D. Tex. June 15, 2006) ...........7

*Rosales v. TXI Operations,* No. 3:03-CV-2923-N, 2005 U.S. Dist. LEXIS 3977
(N.D. Tex. March 14, 2005) ........................................................................................8

*Allied Elec. Serv., Inc. v. Room Serv. TV, Inc.*, 1995 U.S. Dist. LEXIS 15283
(D.N.H. 1995) ..............................................................................................................9

*Varela v. Nat'l Reinsurance Corp.*, 1998 WL 440038 (N.D. Tex. 1998) .......................10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARK A. HANSEN,                          §
                                         §
        Plaintiff                        §
                                         §
vs.                                      §          CIVIL ACTION NO. H-05-3437
                                         §
AON RISK SERVICES OF TEXAS, INC.,        §
                                         §
        Defendant.                       §
                                         §
                                         §
                                         §

## DEFENDANT AON RISK SERVICES OF TEXAS, INC.'S
## MOTION FOR SUMMARY JUDGMENT

The defendant, Aon Risk Services of Texas, Inc. (Aon), moves under Rule 56 of the

Federal Rules of Civil Procedure for summary judgment dismissing all claims made by the

plaintiff, Mark A. Hansen (Hansen).

### I.
### BACKGROUND FACTS

A.      Hansen's Hire and Initial Position

Aon provides insurance brokerage and other business and risk management solutions to

companies. Aon originally hired Hansen on May 3, 2001 and he worked in several "back office"

positions throughout his employment. He initially reported to John Gabel who worked in New

York City. *See Exhibit 1, Deposition of Mark Hansen, at p. 58, line 24 to p. 59, line 1.* Hansen,

who had worked for Gabel at a prior employer where he was involved with insurance claims

processing, received a call from Gabel offering him a position with Aon. *Id. at p. 38, line 17 to

p. 40, line 13.* His initial position was Director, Technical Operations and his unit was

responsible for claims, loss control and data management. *Id. at p. 39, lines 19-20; also see*

1

*Exhibit 2, Declaration of Ernie Joyner, at ¶ 3.* Hansen admits that Victoria McDonough, the Managing Director in charge of the Houston Client Services Center complained about his performance while he was in that position, although Hansen did not report to her at the time. *Ex. 1 at p. 222, lines 5-23; Exhibit #23 to Hansen Deposition.* At all times, Hansen was an at-will employee. *Ex. 2 at ¶ 9.*

B.    Hansen as Director, Placement Services Unit

Because of company restructuring, Aon eliminated the Director, Technical Operations position in March of 2002. *Ex. 1 at p. 75, lines 18-19.* Bob Bondi, the Managing Principle of the New York office asked McDonough to "find a spot" for Hansen in Houston. *Id. at p. 223, lines 12-18.* McDonough initially hired Hansen to work in special projects. *See Exhibit 3, Declaration of Victoria McDonough, at ¶ 2; Ex. 1 at p. 75, lines 4-23.* In June 2002, McDonough selected him to be the Director, Placement Services Unit (PSU). *Id. at p. 74, line 24 to p. 75, line 10; Ex. 3 at ¶ 2.* As Director, PSU, Hansen was responsible for initiating and managing all client service activities related to insurance policy placement and the renewal process for insurance policies. While employed at this position, he was unable to effectively carry out his job duties and was the subject of internal complaints about his inability to perform his duties and manage his unit. *Id. at ¶ 3.* Bob Bondi, Peter McKenzie, Joe Propati and Bill Burke, all male managers, also complained about his performance, and Burke in particular informed McDonough that the field personnel that Hansen supported were losing confidence in him. *Id. at ¶ 3-5 and Attachments 1, 2.* McDonough counseled Hansen about these problems, specifically informing him that he had excessive turnover, his subordinates lacked confidence in him, he did not provide his team leads with early warning reports regarding invoicing, and there was a perception that he did not have the skills to work in this position. *Id. at Attachment 1.*

2

C.     Hansen's Demotion

McDonough met with Hansen in May of 2003, and informed him that he was not meeting the company's expectations for his performance. *Ex. 1 at p. 115, lines 18-25; p. 117, lines 9-11.* McDonough gave Hansen three options: (1) a demotion to the position of Assistant Director, Client Services Unit (CSU), although there would be no reduction in his pay, (2) finding another job within the company, or (3) termination with a separation package. *Id. at p. 115, line 25 to p. 116, line 2.* He chose to take the demotion to Assistant Director, CSU. *Id. at p. 119, lines 1-22; Ex. 2 at ¶ 5; Ex. 3 at ¶ 6.* As Assistant Director, Hansen reported to Donna Parsley, the new Director of CSU. *Id.* Hansen alleges that he wanted the position of Director, Document Production. *Ex. 1 at p. 116, lines 2-5.* McDonough placed Kimberly Overgoner in that position because she had a more relevant background and had performed well in her previous director position. *Ex. 3 at ¶ 7.*

Despite the limited nature of his new role, Hansen could not perform his duties adequately, and his limited workload created a problem within the department. The other two Assistant Directors working for Parsley managed 23 and 16 employees respectively, while he managed only 7 employees. *See Exhibit 4, Declaration of Donna Parsley, at ¶ 3; Ex. 1 at p. 156, lines 6-10.* Hansen also made significantly more income that the other two assistant directors. *Id. at p. 195, lines 11-16.* Parsley sought to partially rectify the work-load inequity by attempting to assign support functions for the Dallas field office to his group, but that office rejected the reassignment because of previous experiences with Hansen in which he failed to perform adequately. *See Ex. 4 at ¶ 2 and Attachment 1.* Parsley met with Hansen in October of 2003 to discuss the situation and options for alleviating the work distribution problem. *Id.* In that meeting, Hansen told Parsley that assuming additional duties was "not an option" and that remaining in his current job was "not an option." *Id.* Parsley informed McDonough of Hansen's

3

response, including his unwillingness to consider options, in an email dated October 30, 2003.
*Id.*

D.    Hansen's Termination

Parsley and McDonough discussed the inability to resolve the work disparity issue and Hansen's unwillingness to assist in a resolution of the problem. *Id.; Ex. 3 at ¶ 8-9.* They determined that there were no options available based on the situation except termination. McDonough also discussed the situation with David Barnes and Ernie Joyner of Aon's Human Resources Department, and after reviewing the facts, they concurred in the decision to terminate Hansen. *Id. at ¶ 9; Ex. 2 at ¶ 7.* McDonough, Parsley, and Joyner then met with Hansen on November 4, 2003 and informed him that the company was terminating his employment. *Id.; Ex. 1, p. 159, lines 1 to 22; Ex. 3 at ¶ 9.* McDonough offered Hansen the opportunity to work on a special project at the same salary to ease the transition while he searched for alternate employment. *Ex. 2 at ¶ 8; Ex. 1 at p. 159, line 22 to p. 160, line 22; p. 237, lines 22-24.* Hansen worked for approximately one month on this special project, but eventually abandoned the assignment. *Id. at p. 237, line 17 to p. 238, line 19.* His last day of work was December 2, 2003. *Id. at p. 238, lines 5-6; Ex. 2 at ¶ 8.*

E.    Hansen's Charge of Discrimination and Subsequent Lawsuit

Hansen filed a charge of gender discrimination with the Texas Workforce Commission (TWC) on September 25, 2004.[1] After conducting an investigation, the TWC found no cause to believe discrimination occurred and issued a right to sue letter on May 13, 2005. *See Exhibit 5.* The EEOC subsequently adopted the TWC's findings and issued a right to sue letter on July 8, 2005. *See Exhibit 6.* Hansen filed a pro se complaint in federal court on October 6, 2005

---

[1] Hansen initially completed an intake questionnaire on April 26, 2004; however, the charge was not actually verified and filed until September 25, 2004. This Court indicated in an earlier opinion, under the relation-back doctrine, that this filing was timely based on the November 4, 2003 termination. *See Docket #18, p. 11-12.*

alleging unlawful gender discrimination under Title VII only. *See Docket #1.* He filed an amended complaint on March 29, 2006 after he secured representation by his current lawyer. *See First Amended Complaint, Docket #15.* Hansen alleges in his amended complaint that Aon discriminated against him based on his gender, in violation of both Title VII and Chapter 21 of the Texas Labor Code. *See First Amended Complaint, ¶ 3.* Hansen alleges that his "gender was a motivating factor in Defendant's decision to demote plaintiff, deny him a transfer, and terminate him." *First Amended Complaint, ¶ 14.*

## II.
### SUMMARY OF ARGUMENT

Hansen's claims of gender discrimination under Title VII and the Texas Labor Code based on the demotion and failure to transfer should be dismissed because he failed to comply with the required procedural prerequisites under both statutes for those claims. In addition, Hansen failed to comply with the procedural prerequisites under the Texas Labor Code for his termination claim. Moreover, Aon is entitled to summary judgment on the merits of all three claims because Hansen cannot establish a prima facie case, the company had legitimate reasons for its adverse employment decisions, the company did not unlawfully discriminate against Hansen based on his gender, and because it would have terminated Hansen regardless of any unlawful motive. There are no genuine issues of material fact that would preclude summary judgment, and Aon is entitled to judgment as a matter of law.

III.

ARGUMENT AND AUTHORITIES

A.    Hansen's Claims of Unlawful Demotion and Failure to Transfer Should be Dismissed
      Because he Failed to Comply with the Required Procedural Prerequisites under Title VII
      and Chapter 21 of the Texas Labor Code by Not Filing a Timely Charge of
      Discrimination.

Hansen alleges that his gender was a motivating factor in Aon's decision to demote him

to Assistant Director and deny him a transfer to the position of Director, Document Production

when the company demoted him. *First Amended Complaint, ¶ 14.* According to Hansen,

McDonough made the decision to demote him to Assistant Director on May 5, 2003, effective

June 4, 2003. *First Amended Complaint, ¶ 10.* Hansen alleges that Aon refused to transfer him

to the Director, Document Production at or about the same time. *Id.* Hansen did not submit his

intake questionnaire to the TWC until April 26, 2004 and did not file his charge with the TWC

until September 24, 2004.

A plaintiff must file a charge of discrimination with the TWC and/or EEOC within 300

days after learning of the conduct alleged. *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir.

1998) (*citing* 42 U.S.C. § 2000e-5(e)(1)). Otherwise, the claims are time barred by the plaintiff's

failure to exhaust his administrative remedies. *Id.* (affirming summary judgment on time-barred

demotion and promotion claims that occurred more than 300 days before charge was filed); *also*

*see Sabzevari v. Reliable Life Ins. Co.*, 2006 WL 1663715, *2-3 (S.D. Tex. June 15, 2006)

(*attached as Exhibit 7*). Because Hansen was aware of his demotion and denial of transfer on

May 5, 2003, he should have filed a charge with either the EEOC or TWC by March 1, 2004.

Hansen did not file his charge until September 24, 2004, and even if the time for filing the charge

would relate back to the TWC's receipt of his intake questionnaire, that April 26, 2004 date also

is untimely. Furthermore, Hansen's charge is untimely even if the court would consider the date

of the actual demotion and failure to transfer, June 4, 2003 and the date of the intake

6

questionnaire.  As a result, Aon is entitled to summary judgment on Hansen's claims of unlawful demotion and failure to transfer under both Title VII and Chapter 21 of the Texas Labor Code.

B.     Hansen's Claims of Unlawful Demotion, Failure to Transfer, and Discharge Should be Dismissed Because he Failed to Comply with the Required Procedural Prerequisites under Chapter 21 of the Texas Labor Code by Not Filing his Lawsuit within 60 Days of the Receipt of his Right to Sue Letter.

Hansen originally asserted his gender discrimination claims only under Title VII in his original complaint, but added claims under Chapter 21 of the Texas Labor Code when he filed his amended petition. *First Amended Complaint, ¶ 3 and 14.*  Under Section 21.254 of the Texas Labor Code, the plaintiff may bring a civil action within 60 days after the TWC issues a right to sue letter.  The TWC sent Hansen a right to sue letter on May 13, 2005. *See Exhibit 5.*  Under the mailbox rule, he should have received the letter approximately 3 days later, by May 16, 2005. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).  However, he filed his original complaint 143 days later, on October 6, 2005.[2]  Therefore, any claims Hansen has under the Texas Labor Code are untimely and must be dismissed.  Aon does not dispute that Hansen timely filed a Title VII claim based on his termination when he filed his lawsuit on October 6, 2005 after receiving the right to sue letter from the EEOC, which the EEOC mailed on July 8, 2005. *See Exhibit 6.*

C.     Aon is Entitled to Summary Judgment on the Merits of Hansen's Claims of Unlawful Gender Discrimination.

In order to prevail on his gender discrimination claim, Hansen must first establish a prima facie case of discrimination by showing: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person who is not a member of the protected class. *Bauer v. Albermarle Corp.*, 169 F.3d

---

[2] Although courts have differed on the time period of the mailbox rule, they generally range from three to seven days. *Taylor*, 296 F.3d at 379-80.  Therefore, even under the maximum allowable time period, Hansen's claims would still be untimely under the Texas Labor Code.

962, 965 (5th Cir. 1999). Once Hansen makes a prima facie showing, the burden of production shifts to Aon to proffer a legitimate, nondiscriminatory reason for the challenged employment action. *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001). If Aon meets this burden of production, Hansen must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination; or (2) that the defendant's reason, while true is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *See, e.g., Rosales v. TXI Operations*, 2005 U.S. Dist. LEXIS 3977, *7 (N.D. Tex. March 14, 2005) (*attached as Exhibit 8*); *Boyd v. State Farm Ins. Co.*, 158 F.3d 326, 329 (5th Cir. 1998).

Assuming for the purposes of argument only that Hansen filed a timely charge of discrimination and filed his lawsuit within the required time period from the date he received his right to sue letter, Aon is entitled to summary judgment because the company did not unlawfully discriminate against Hansen. Hansen cannot establish a prima facie case on his claims of unlawful demotion, failure to transfer, and termination because he was not qualified for the positions. In addition, Aon had legitimate non-discriminatory reasons for its actions and Hansen cannot establish pretext in these decision or that gender was a motivating factor in the company's decisions. As a result, summary judgment for Aon is warranted.

      1.    *Hansen cannot establish a prima facie case.*

Hansen was not qualified for the positions that he held at the company, which prevents him from establishing a prima facie case of unlawful discrimination. Prior to working at Aon, nearly all of Hansen's prior job experience was limited to claims adjusting. *Ex. 1 at p. 37, line 9 to p. 39, line 10.* The position of Director, PSU, from which Aon demoted Hansen, requires extensive knowledge of and experience in the insurance industry, strong knowledge of and experience in ACS operations, and extensive management and leadership abilities. *Ex. 2 at*

8

*Attachment 2*. Similarly, the Director of Document Production position required experience with effectively handling a significant volume of work attributed to the position. *Ex. 3 at ¶ 7*. Because Hansen only had a claims background and did not or could not meet these other requirements, he was not qualified for these positions. Similarly, he did not meet the requirements for the position of Assistant Director, CSU, the position he held prior to his discharge. That position had qualifications similar to the Director, PSU position. *Ex. 2 at Attachment 3*. It required more experience with the insurance brokerage industry than Hansen had or was willing to learn. Therefore, he cannot establish the qualifications element of a prima facie case of unlawful gender discrimination, and summary judgment for Aon is appropriate.

2.    *Aon based its adverse employment decisions on legitimate, nondiscriminatory reasons.*

Even if the Court determines these claims to be timely and if Hansen meets his prima facie burden regarding these actions, Aon had legitimate, nondiscriminatory reasons for the adverse employment actions it took against him.

a.    Demotion.

As discussed earlier, Hansen was unable to effectively carry out his job duties and was the subject of several internal complaints. *Ex. 3 at ¶ 3 and Attachment 1, 2*. Additionally, at least two male managers indicated that they had problems with his performance. *Id. at ¶ 3 and Attachment 2*. McDonough discussed these problems with Hansen, indicating his excessive turnover, his subordinates' lack of confidence in his abilities, and the general perception that he did not have the skills to work in the position. *Id. at Attachment 1*. Eventually, McDonough informed Hansen that he was not meeting the company's expectations, and gave him three options, one of which was to take a demotion to the position of Assistant Director, CSU. *Ex. 1 at*

9

*p. 115, line 24 to p. 116, line 2.* Hansen accepted this position. Therefore, Aon had a legitimate nondiscriminatory reason for demoting Hansen.

      b.   <u>Failure to transfer.</u>

Aon also had a legitimate reason for placing Kimberley Overgoner in the Director, Document Production position. Overgoner had more relevant experience than Hansen in the duties required of the position. *Ex. 3 at ¶ 7.* Specifically, she was skilled in working efficiently with large volume matters, which made her appropriate for this position. *Id.* She had also performed well as a director in her prior position. *Id.* On the other hand, Hansen did not have experience with the type of work involved in the Document Production group and had performance problems in his job. Furthermore, McDonough did not specifically consider Hansen for the position. *Id.* Accordingly, Aon legitimately denied Hansen a transfer to the Director, Document Production position.

      c.   <u>Termination</u>

Regarding Hansen's unlawful termination claim, Aon also had a legitimate, nondiscriminatory reason for terminating him. Specifically, as shown by Donna Parsley's October 10, 2003 email to McDonough, he had a significantly lighter workload than the other assistant directors and the company was finding it "difficult to carve out enough administrative and report functions within CSU to (1) afford him a full work load and (2) make a positive impact to the AD's duties." *Ex. 4 at Attachment 1; Ex. 1 at p. 155, line 4 to p. 157, line 4.* It was evident that, after several months at a limited role as Assistant Director, he was still not able to handle his responsibilities and that he was misplaced. *Ex. 3 at ¶ 8; Ex. 2 at Attachment 4.* When Parsley asked him to take on a broader role, he stated that this was not an option and that it also was not an option to remain in his current position. *Ex. 4 at Attachment 1.* Parsley informed McDonough of these problems including Hansen's unwillingness to accept a greater role. *See id.*

Thus, his failure to perform adequately, lack of qualifications, and unwillingness and inability to obtain a greater workload were all legitimate reasons to terminate his employment.

      3.    *Hansen cannot demonstrate pretext or unlawful intent in Aon's decisions.*

Hansen cannot establish that Aon's legitimate non-discriminatory reasons for its actions are false or that Aon intended to discriminate against him based on his gender.

      a.    <u>Aon did not unlawfully discriminate against Hansen because of his gender.</u>

Hansen attributes the unlawful conduct in this case to McDonough, Managing Director of the Houston office. Although McDonough was the ultimate decision maker on all the decisions that Hansen challenges, she was not the only person with input into the decisions. An important source of information about Hansen's performance was Aon field personnel who relied on Hansen and the groups he managed for back office support. These individuals were predominantly male. Moreover, Bill Burke, a male and McDonough's supervisor, urged her to remove Hansen from the Director, PSU position because of the service problems and confusion caused by Hansen's poor performance. *Ex. 3 at Attachment 2.* McDonough also received recommendations from Parsley, Hansen's direct supervisor at the time of his termination, and Barnes and Joyner, of the human resources department. *Id. at ¶ 9.* Joyner and Barnes are males. McDonough, Parsley, and Joyner all declare that gender was not a factor in any decision related to Hansen's employment and that they did not discuss gender in any meeting related to these decisions. *Id. at ¶ 12; Ex. 4 at ¶ 5; Ex. 2 at ¶ 10.*

In addition, McDonough's lack of unlawful intent is evidenced by other employment decisions in which she was involved. For example, she has promoted Richard Wong, Mark Wagner, and Tom Shores, all of whom are males. *Ex. 3 at ¶ 11.* She has also demoted Kimberley Helm (Overgoner), Irma Espada, Carol Grice, and Carol Martin, all of whom are

females. *Id.* Hansen himself admits that McDonough asked him to terminate a female, Mary Ann Tucker, and that McDonough has terminated other females. *Ex. 1 at p. 89, lines 4-23.* As a result, these decisions are indicative of a lack of discriminatory intent against males.

Similarly, the same-actor doctrine supports the conclusion that Hansen was not subjected to unlawful gender discrimination. If the same person hires and fires an employee, there is an inference that "discrimination was not the employer's motive in terminating the employee." *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 321 (5th Cir. 1997). "The 'same actor doctrine' reasons that 'from the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.'" *O'Brien v. Lucas Assoc. Pers., Inc.*, 127 Fed. Appx. 702, 707 (5th Cir. 2005) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996)). McDonough hired Hansen to work as Director, PSU in June of 2002. *Ex. 3 at ¶ 2; Ex. 1 at p. 74, line 24 to p. 75, line 10.* She also was the ultimate decision maker in Hansen's demotion and denial of transfer in May 2003, and discharge in November 2003. *Ex. 3 at ¶ 6 and 9; Ex. 1 at p. 119, lines 2-25; p. 159, lines 2-22.* Because McDonough was the ultimate decision maker of these employment actions that Hansen alleges are the basis of his claims, the same actor doctrine supports a conclusion that Hansen did not suffer unlawful discrimination. Therefore, Hansen's claims must fail as a matter of law.

> b.   Hansen cannot demonstrate that Aon's reasons for its decisions to demote, refuse to transfer, and terminate are false.

Aon has presented legitimate, non-discriminatory reasons for Hansen's demotion, denial of transfer, and discharge. Hansen admits that the reasons stated were the reasons given him for these actions. *See, e.g., Ex. 1 at p. 115, line 18 to p. 117, line 11; p. 124, line 9 to p. 125, line 5; p. 127, lines 10-13; p. 154, line 1 to p. 158, line 23.* Hansen relies exclusively on his subjective

12

belief that the reasons for the company's adverse decisions (demotion, refusal to transfer, and termination) are false or on his apparent lack of knowledge regarding his inability to perform adequately. *See id. at p. 127, lines 10-19* (stating his belief that McDonough's statement to him regarding the lack of confidence the field has in him was false because "none of those issues had been brought to my attention"); *p. 130, line 22 to p. 131, line 3* (stating that he did not have "any statistics to prove" that he was not providing his team leads with early warning reports regarding invoicing); *p. 162, line 22 to p. 163, line 1* (stating that he disagrees with "the allegations why I was terminated"); *p. 164, lines 15-24* (stating that he believes gender was the reason for his termination because he "had no information to document otherwise"); *p. 193, lines 9-25* (stating that he was unaware that the Dallas field office objected to a reassignment to him); *p. 204, line 23 to p. 205, line 15* (stating that he was not aware of any emails regarding his performance and that he was not spoken to about his performance).

An individual's disagreement with the reasons for the employer's decision is not sufficient to establish pretext. *Septimus v. Univ. of Houston*, 399 F.3d 601, 610 (5th Cir. 2005); *see also Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988) ("plaintiff's conclusory testimony of adequate job performance, standing alone, is insufficient to raise a jury issue of [unlawful discrimination]"). The plaintiff must come forward with some evidence that would cause the fact finder to believe his evaluation of his performance versus the employer's. *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir. 1993). Hansen produced no such evidence in his deposition, as indicated above. Moreover, Hansen cannot contradict certain of the bases used by McDonough in her decision making process. McDonough relied on information from field personnel (mostly males) that Hansen was not knowledgeable, responsive, or otherwise meeting their needs. *Ex. 3 at ¶ 3-5 and Attachments 1, 2.* This evidence cannot be based on unlawful gender discrimination and cannot be contradicted

13

by Hansen. Accordingly, Hansen cannot establish pretext in Aon's adverse employment decisions. Therefore, Hansen cannot raise a genuine issue of material fact based on his subjective beliefs and cannot show pretext in Aon's employment decisions.

           c.      <u>Hansen cannot establish unlawful intent to discriminate based on gender.</u>

The ultimate issue in any Title VII case is whether the employer intended to discriminate against the plaintiff because of membership in a protected group. *See Levias v. Texas Dept. of Criminal Justice*, 352 F. Supp. 2d 751, 766-68 (S.D. Tex. 2004). Aon has provided, above in section 3(a), evidence of a lack of unlawful intent. Hansen simply has no evidence of unlawful intent, and therefore, cannot raise a genuine issue of material fact on this issue.

Although it is not clear from his deposition testimony what Hansen will offer in support of his gender discrimination claims, he alleges three situations that he may try to use as evidence on the ultimate issue in this case. First, Hansen alleges that McDonough told him, when he was in the position of Assistant Director, CSU, that the other two assistant directors, who were female, were paid much less than he was and it could pose a problem because he was a man. *Ex. 1 at p. 195, lines 11-20*. The context of this alleged statement was that Hansen's salary was higher than the two female assistant directors even though his duties were significantly less than theirs. *See Ex. 4 at Attachment 1*. This comment cannot demonstrate adverse intent against Hansen as a male because, if anything, this comment demonstrated possible discrimination against females, not males. Furthermore, Hansen does not make a claim of disparate compensation, and in fact cannot make such a claim because he made substantially more money than the two females holding comparable positions. Thus, the comment is a stray remark that cannot be evidence of unlawful discriminatory intent against Hansen or males. *See Krystek v. Univ. of So. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999).

Hansen also claims that Parsley informed him, the day after he was terminated, that the company hired a woman to fill the position of Assistant Director, CSU.  Hansen asserted in his deposition that Parsley made a point of stating that it was a woman who was hired, which he believes shows unlawful intent.  *Ex. 1 at p. 169, line 12 to p. 170, line 23*.  However, Hansen specifically acknowledged that Parsley did not say that the company hired Rachelle Simon, the woman who replaced him, *because* she was a woman.  *Id. at p. 169, lines 22-25*.  Parsley also states that if she made such a comment about Hansen's replacement, she did so merely as an identifying characteristic.  *Ex. 4 at ¶ 4*.  Therefore, this statement cannot be evidence of discriminatory intent.

In addition, even if the Court were to consider this statement evidence that the company hired Simon because she is a woman, this comment amounts to a stray remark.  In order for comments to be "sufficient evidence of discrimination, they must be '(1) related [to the protected class of persons of which the plaintiff is a member]; (2) proximate in time to the terminations; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.'"  *Krystek*, 164 F.3d at 256 (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996)).  Otherwise, the comment is a stray remark, and cannot be supportive of discrimination.  *Id.*  In this situation, McDonough, not Parsley, made the final decision to both terminate Hansen and hire Simon.  *Ex. 3 at ¶ 9-10*.  Additionally, the comment concerned the decision to hire Simon, not the decision to terminate Hansen, and it was made *after* the company terminated Hansen.  *Id. at ¶ 10*.  Therefore, the statement does not relate to the employment decision at issue in this case.  As a result, the comment is not probative of unlawful discrimination.

Hansen also testified at his deposition that demotions or terminations of other male directors are evidence of hostility towards males.  Evidence of discrimination against other

employees is generally not probative of intent related to the plaintiff. *Goff v. Continental Oil Co.*, 678 F.2d 593, 596-97 (5th Cir. 1982). Even if the Court considers such evidence, the circumstances mentioned do not show any hostility by Aon against males. One situation raised by Hansen concerns John Canter being demoted from his position of Director, Client Account Services. *Ex. 1 at p. 90, lines 6-20; p. 120, line 12 to p. 121, line 12.* However, Hansen specifically stated that he did not know if Canter was discriminated against based on his gender. *Id. at p. 90, lines 18-20.* Additionally, Hansen admitted that he was Canter's replacement. *Id. at p. 90, lines 7-8; p. 206, lines 18-20.* Canter's demotion could not be based on gender because a male (Hansen) replaced him. As a result, the company's treatment of Canter does not support a conclusion that Aon acts in a discriminatory manner against males.

Hansen also alleges that Bob Hamilton was subjected to discrimination. *Id. at p. 165, line 20 to p. 166, line 3.* Hansen alleged that "McDonough would not speak to him after – sometime after his employment. So, he quit to take a different job." *Id. at p. 165, lines 21-23.* However, not only does this statement lack any indication of gender discrimination, Hansen provides no other evidence to show discriminatory treatment, nor any adverse action taken against Hamilton. Therefore, this cannot support Hansen's discrimination claim.

Finally, Hansen alleges that another director, Dan Yelich, was "spoken to in a hostile manner." *Id. at p. 163, line 10.* He also states that because Yelich was reassigned three times in six months, that it shows that McDonough "was trying to move him into as many different locations outside of her service center as possible and other positions within the service center." *Id. at p. 183, lines 7-18.* However, Hansen admits that Yelich was not terminated. *Id. at p. 183, lines 19-20.* Additionally, Yelich still is employed by Aon at a Director level. *Ex. 2 at ¶ 11.* There is no other evidence of any negative treatment toward Yelich, and especially considering he was not demoted or terminated and still remains a Director, this cannot support Hansen's

claim of discrimination.   Therefore, the alleged treatment of other male employees is not supportive of Hansen's claims.  As a result, Hansen has no evidence of unlawful discrimination based on gender, and summary judgment for Aon is appropriate.

      4.     *Aon is entitled to judgment based on an affirmative defense.*

Assuming for the purposes of argument only that the trier of fact would determine that unlawful gender discrimination was a motivating factor in Hansen's termination of employment, Hansen is not entitled to any damages because the company would have discharged him from employment in the absence of the unlawful motive.   42 U.S.C. § 2000e-2(m), § 2000e-5(g)(2)(B).  As described more fully above, Hansen had several problems with his performance and was the subject of numerous complaints.  Additionally, as indicated in Parsley's email to McDonough, he was unwilling to take on additional responsibilities or continue in his current position. *Ex. 4 at Attachment 1.*  Aon acted reasonably by terminating Hansen for his failure to perform and his lack of cooperation.  Therefore, Hansen would have been terminated even if there was any unlawful discriminatory motive.

D.    <u>In the Alternative, Hansen's Jury Demand is Not Timely.</u>

Hansen's jury demand must be denied because it was not made in a timely manner. Under Rule 38 of the Federal Rules of Civil Procedure, a party may make a jury demand by "serving upon the other parties a demand therefore in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue...."  Hansen served Aon with only the summons, complaint, order for conference, and disclosure of interested parties on February 22, 2006 (*Docket #9*).   Aon answered on March 9.  Hansen did not serve a jury demand on Aon until he filed his Motion for Leave to Amend and Amended Complaint on March 29. Rule 38 specifically requires service as

well as filing. Because Hansen waited 20 days after Aon initially filed its answer to serve his jury demand, his request is untimely.

Hansen's only explanation for failing to initially demand a jury was that he was pro se. *Ex. 1 at p. 199, line 13 to p. 200, line 3.* This excuse does not justify the failure to properly demand a jury. *See Allied Elec. Serv., Inc. v. Room Serv. TV, Inc.*, 1995 U.S. Dist. LEXIS 15283 (D.N.H. 1995) (stating that the "'rule that pro se plaintiffs' pleadings must be less stringently construed cannot overcome [plaintiff's] actual failure to notify [defendants] of his jury trial demand.'") (*attached as Exhibit 9*). Even after he retained an attorney, he indicated that he simply did not remember to serve the jury demand. *Docket #22, p. 3.* Courts have found that "mere inadvertence" to timely demand a jury was a significant reason to deny a late request. *See, e.g., Farias v. Bexar County Board of Trustees*, 925 F.2d 866, 873 (5th Cir. 1991); *Varela v. Nat'l Reinsurance Corp.*, 1998 WL 440038, *2 (N.D. Tex. 1998) (*attached as Exhibit 10*). Therefore, Hansen's late jury demand must be denied.

## IV.
### CONCLUSION AND PRAYER

For the foregoing reasons, Aon respectfully requests that the Court enter summary judgment on all of Hansen's claims, and that it be granted its costs and all other and further relief to which it may be entitled.

Respectfully submitted,

/s/ Kerry E Notestine

Kerry E Notestine (Attorney-in-Charge)
State Bar No. 15116950
Federal I.D. No. 2423
LITTLER MENDELSON
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Fax)

*Of Counsel*:

Nitin Sud
State Bar No. 24051399
Federal I.D. No. 611307
LITTLER MENDELSON
A Professional Corporation
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Fax)

ATTORNEYS FOR DEFENDANT, AON RISK
SERVICES OF TEXAS, INC.

## CERTIFICATE OF SERVICE

I certify that I sent a copy of Defendant Aon Risk Services of Texas, Inc.'s Motion for Summary Judgment to the following via certified mail, return receipt requested, on July 14 , 2006:

G. Scott Fiddler
Law Office of G. Scott Fiddler, P.C.
13831 Northwest Freeway, Suite 510
Houston, Texas 77040

/s/ Nitin Sud
Nitin Sud

Firmwide:81096007.4 026861.1068

19