# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK A. HANSEN, | § | |
| Plaintiff | § § § | |
| vs. | § § | CIVIL ACTION NO. H-05-3437 |
| AON RISK SERVICES OF TEXAS, INC., | § § § | |
| Defendant. | § § § § | |

## DECLARATION OF DONNA PARSLEY

My name is Donna Parsley. I am of sound mind and capable of making this Declaration. I am over the age of eighteen. This declaration is based on my own personal knowledge of the facts stated herein:

1. I am the Director, Client Services Unit (CSU), Aon Risk Services of Texas, Inc. In my position, Mark Hansen worked directly under me as Assistant Director, CSU from June to November 2003.

2. Attachment 1 is an accurate copy of an October 30, 2003 email I sent to Victoria McDonough regarding a discussion I had with Hansen regarding his performance and the fact that his workload was minimal compared to the other assistant directors. The email contains an accurate description of a meeting I had with Hansen on October 29, 2003. It is Aon's regular course of business to maintain such records. As an Aon employee, I am authorized to make and maintain such documents. This document was made at or near the time the stated acts and events occurred.

3. During the time Hansen worked as Assistant Director, CSU, there were two other assistant directors. They managed 23 and 16 employees respectively, while Hansen managed only 7 employees.

4. After Aon hired Rachelle Simon as Assistant Director, CSU, I informed Hansen that he would have to change locations in the office because his replacement would use the area where Hansen had been working as an assistant director. If I indicated to Hansen that his replacement was a female, I did so merely as an identifying characteristic. I did not state that the company hired Simon because she was female, nor am I aware of anyone who recommended Simon for the position because she was female.

5.  To my knowledge, Hansen's gender was not a factor in any decision related to his employment, including but not limited to his compensation, May/June 2003 demotion, the terms and conditions of his employment, and his termination of employment. I did not consider Hansen's gender in any recommendation that I made related to his employment. I had discussions with McDonough and others regarding Hansen's performance and other employment issues, and we never discussed Hansen's gender in these meetings.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 14, 2006.

*Donna Parsley*
Donna Parsley

# ATTACHMENT 1 TO EXHIBIT 4


 **Donna Parsley**
10/30/2003 02:53 PM

To: Victoria McDonough/TX/ARS/US/AON@AONNA
cc:
Subject: Mark Hansen

I had a discussion with Mark Hansen the morning of October 29, 2003. Mark and I discussed the functions he was currently performing on a daily basis such as AVX, assignment of LN10s, maintaining a new business spreadsheet and transition meetings, fielding team issues for Client Connection and the New Business team (6 people). He is running open inventory reports, usually once a week, LN 30 reports once or twice a month and performs the analysis for the field office reports with contribution from Kim and Tracie for all the commentary. In addition, I reiterated that his help was also required daily in the CSU que per our last AD meeting.

I advised Mark that we were continuing to review the current structure within CSU in regard to balancing work loads for the three ADs as "the current situation was just not working". Although the transition of the Dallas/Ft Worth team did not work out, we were still pursuing a way to more equally distribute the internal teams and assignment of field offices. We discussed that the current structure was not providing enough relief to Tracie Jones's team, the largest with 23 staff members, and not positively affecting CSU to the fullest degree. I stated that we were finding it difficult to carve out enough administrative and report functions within CSU to (1) afford him a full work load and (2) make a positive impact to the AD's duties. Furthermore, the current structure was not benefiting the department in the long run since all three team leads could not equally divide staff, field offices and department functions nor fully support each other.

I asked Mark if he had a desire to and felt that he could take on another team (possibly the Florida field offices and team) and effectively handle the field office staff, accounts and team issues. He said that this was not an option, I was the Director and he would do whatever we determined was best for CSU. I also asked if he intended to remain in his current position for a while and again he stated, this was not an option. He said that he had performed so many duties since joining Aon that it really did not matter; he would do whatever was asked of him. I asked Mark if there were any past or present issues with any of the Florida offices, Atlanta, Nashville or Richmond and he said there were none known to him. Mark did request that if he was granted another team that he not continue to be primarily responsible for the CSU que on a daily basis. I agreed and commented that we needed to work more with CSU staff to pull their daily work from the que.

The conversation ended and I advised Mark that I had to discuss this issue further with Vicki McDonough to determine what steps we needed to take next and we would get back with him shortly.

AON 0002
[HANSEN]