# EXHIBIT 8

LEXSEE 2005 US DIST LEXIS 3977

**GERONIMO ROSALES and CURTIS HOUSE, Plaintiffs, v. TXI OPERATIONS, LP, Defendant.**

Civil Action No. 3:03-CV-2923-N, Consolidated with Civil Action No. 3:03-CV-2991-N

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

*2005 U.S. Dist. LEXIS 3977*

March 14, 2005, Decided
March 14, 2005, Filed

**DISPOSITION:** Defendant's motions for summary judgment granted. Defendant awarded costs. All relief not expressly granted denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employees filed separate suits against defendant employer alleging that they were racially discriminated against in violation of Title VII of the Civil Rights Act of 1964 (Title VII). The suits were consolidated in the court. The employer filed summary judgment motions in each suit, contending that the employees had failed to establish a prima facie case of discrimination under Title VII.

**OVERVIEW:** The employees drove cement trucks for the employer. A dispatcher assigned deliveries based upon the availability of trucks, as indicated by the drivers. Like all other drivers, the employees were eligible to receive incentive bonuses based on the average yards of concrete that they delivered per hour during each pay period. The drivers contended that Caucasian drivers received preferential treatment with regard to the assignments they were given, the trucks that they were assigned to drive, and the maintenance of those trucks. Employee two additionally claimed that he did not receive promotions and other recognition that he was entitled to receive and that the employer delayed reporting injuries sustained by non-Caucasian employees in order to avoid paying workers' compensation for those injuries. The court found that the employees had not alleged any "adverse employment actions" for Title VII purposes. Most of their claims pertained to working conditions that did not impede their ability to perform their jobs. No prima facie case was shown as to employee two's failure to promote claim which alleged the jobs were given to other non-Caucasian employees.

**OUTCOME:** The court granted the employer's summary judgment motions and dismissed the employees' claims with prejudice. It denied all other relief and stated that its decision was a final judgment in the suit.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > Appropriateness*
*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN1] Summary judgment is appropriate under *Fed. R. Civ. P. 56* when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits presented, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. The moving party must demonstrate the absence of any genuine issue of material fact, and the court construes all evidence in favor of the party opposing the motion.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards > Materiality*

[HN2] The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.

*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
*Labor & Employment Law > Discrimination > Actionable Discrimination*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
[HN3] A claim for discrimination may be proved by direct evidence or by following the modified McDonnell Douglas framework, also known as the "pretext method" of indirect proof. Direct evidence in the employment discrimination context is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption. Direct evidence does not include stray remarks in the workplace, statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process itself. Statements which merely suggest discriminatory motive are not sufficient to constitute direct evidence of discrimination and avoid the burden-shifting framework of McDonnell Douglas. A stray use of the term "boy" on one occasion does not constitute direct evidence of discrimination where the comment is not alleged to be related to a decisional process or a discriminatory act.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations > General Overview*
[HN4] A discrete retaliatory or discriminatory act occurs on the day that it happens. A party, therefore, must file a charge within either 180 or 300 days of the act or lose the ability to recover for it.

*Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions*
*Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Burdens of Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Burdens of Proof > Employee Burdens*
[HN5] Lacking direct evidence of discrimination, a court analyzes employment discrimination claims, including allegations of race-based discrimination, under the burden-shifting framework established in McDonnell Douglas, as modified by the United States Court of Appeals for the Fifth Circuit, which requires the following steps: the plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative).

*Labor & Employment Law > Affirmative Action > General Overview*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burdens of Proof*
*Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions*
[HN6] In order to establish a prima facie case of race-based discrimination under Title VII of the Civil Rights Act of 1964, a plaintiff must show that he: (1) belongs to a protected group; (2) was qualified for his position; (3) was dismissed or suffered an adverse employment action; and (4) was replaced with a similarly qualified person who was not a member of the employee's protected group. The United States Court of Appeals for the Fifth Circuit has cautioned that, to establish a prima facie case, a plaintiff need only make a very minimal showing. The burden of establishing a prima facie case of disparate treatment is not onerous.

*Administrative Law > Agency Adjudication > Decisions > General Overview*
*Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > Adverse Employment Actions > Benefits*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN7] Title VII of the Civil Rights Act of 1964 is designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions. Ultimate employment decisions include acts such as hiring, granting leave, discharging, promoting, and compensating. The United States Court of Appeals for the Fifth Circuit has explained that without such a restrictive definition of adverse employment action, the Equal Employment Opportunity Commission, already staggering under an avalanche of filings too heavy for it to cope with, would be crushed, and serious complaints would be lost among the trivial.

*Civil Rights Law > Contractual Relations & Housing > Fair Housing Rights > General Overview*
*Governments > Courts > Judicial Precedents*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN8] The United States Court of Appeals for the Fifth Circuit has consistently and unambiguously rejected attempts to expand the definition of "adverse employment action" under Title VII of the Civil Rights Act of 1964 to include claims regarding working conditions. Employee truck drivers' claims of discrimination regarding truck assignments, maintenance, and tire replacement do not constitute "ultimate employment actions" under Fifth Circuit precedent.

*Administrative Law > Agency Adjudication > Decisions > General Overview*
*Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN9] Account assignments are administrative decisions not properly characterized as "ultimate employment decisions" under Title VII of the Civil Rights Act of 1964.

*Contracts Law > Remedies > Specific Performance*
*Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN10] Unfair performance evaluations, COP leave delay, reassignment and additional work assignments; a (possibly public) employee reprimand, negative feedback on a project, lack of specific performance standards, and a lower bonus than other employees are interlocutory or mediate decisions having no immediate effect upon employment conditions, which do not amount to ultimate employment decisions proscribed by Title VII of the Civil Rights Act of 1964.

*Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions*
*Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Burdens of Proof > Employee Burdens*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN11] A failure to hire an employee into a position for which he is qualified could be an "adverse employment action" under Title VII of the Civil Rights Act of 1964. To establish a prima facie case of racial discrimination with regard to such a claim, the position must have been filled by a person of a race different from the plaintiff's race.

*Civil Rights Law > Contractual Relations & Housing > Fair Housing Rights > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Coverage & Definitions > General Overview*
*Workers' Compensation & SSDI > Coverage > General Overview*
[HN12] The United States District Court for the Northern District of Texas, Dallas Division, finds that the reporting of workers' compensation injuries is an administrative matter which is not an ultimate employment decision under Title VII of the Civil Rights Act of 1964.

*Civil Rights Law > Contractual Relations & Housing > Fair Housing Rights > General Overview*
*Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN13] The failure to timely receive a watch as a job award is simply not an ultimate employment decision under Title VII of the Civil Rights Act of 1964. The outright denial of a performance award is not an adverse employment action.

*Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN14] Individual work assignments do not rise above having mere tangential effect on a possible future ultimate employment decision.

**COUNSEL:** [*1] For Geronimo Rosales, Plaintiff: Erik W Hansen, Marsh Odom & Hansen, Denton, TX.

For Curtis House, Consol Plaintiff: Erik W Hansen, Marsh Odom & Hansen, Denton, TX.

For TXI Operations, L.P., Defendant: Ronald E Manthey, Baker & McKenzie -- Dallas, Dallas, TX; Melissa M Hensley, Baker & McKenzie, Dallas, Tx.

**JUDGES:** David C. Godbey, United States District Judge.

**OPINIONBY:** David C. Godbey

**OPINION:**

### ORDER

Before the Court are Defendant TXI Operations, L.P.'s (TXI) Motions for Summary Judgment as to Plaintiffs Curtis House (House) and Geronimo Rosales (Rosales), both filed on July 28, 2004. Because the Court finds that none of House's or Rosales' claims amount to an "adverse employment action" under Fifth Circuit precedent, House and Rosales have failed to establish a prima facie case of discrimination. Accordingly, the Court grants TXI's motions.

### I. BACKGROUND

Defendant TXI is a supplier of cement, steel, concrete and aggregates. TXI hired Plaintiffs Curtis House and Geronimo Rosales as drivers to deliver loads of concrete from its Denton, Texas facility to TXI customers in north Texas. House and Rosales, like TXI's other drivers, were each assigned a cement truck capable [*2] of hauling ten yards n1 of concrete. Like all TXI drivers, House and Rosales were eligible for incentive bonuses, determined by the average yards of concrete delivered per hour during each pay period. n2 According to the undisputed evidence, deliveries are assigned by a dispatcher who receives customer orders, enters them into a computer, and assigns them to an available truck -- usually in the order by which drivers indicate their availability.

---

n1 The Court will follow industry usage in referring to cubic yards as "yards."

n2 The bonus is calculated by taking the individual's average yards per hour for that week, applying that amount to the Production Incentive Table, and adding the corresponding hourly rate to the employee's regular base hourly earnings. If a driver averages at least 3.5 yards per hour, he qualifies for an hourly bonus for that pay period.

---

House and Rosales filed these consolidated lawsuits alleging racial discrimination in violation of *Title VII of the Civil Rights Act of 1964*. [*3] In particular, both House and Rosales claim that: (1) TXI manipulated the delivery assignment order to give white drivers more favorable concrete loads than black or Hispanic drivers like House and Rosales, thus assuring that each received lower incentive pay; (2) TXI provided white drivers with better, newer trucks than black or Hispanic drivers; (3) TXI provided white drivers with better tires than black or Hispanic drivers; (4) TXI failed to maintain House's and Rosales' trucks as well as those assigned to white drivers; and (5) House's and Rosales' supervisor, Tommy Houser (Houser) once used the term "boy" as a racial epithet and stated in 1990 that "Mexicans don't count." In addition, House claims that: (1) he was not selected for three positions for which he was qualified; (2) his supervisors failed promptly to report minorities' injuries, so that minorities' injuries would not be covered by Workers Compensation; and (3) his supervisors failed timely to award him a "safety watch" for safe driving on the job.

### II. No "Adverse employment action" has been alleged

#### A. Summary Judgment Standard

[HN1] Summary judgment is appropriate under *Rule 56* when the pleadings, depositions, [*4] answers to interrogatories, and admissions on file, together with any affidavits presented, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *FED. R. CIV. P. 56(c)*; *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. The moving party must demonstrate the absence of any genuine issue of material fact, *Celotex, 477 U.S. at 322-23*, and the Court construes all evidence in favor of the party opposing the motion. *United States v. Diebold, Inc., 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962)*; *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)*. [HN2] The party moving for summary judgment must "'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)* (citing *Celotex, 477 U.S. at 323*). [*5]

#### B. The McDonnell Douglas Framework

[HN3] A claim for discrimination may be proved by direct evidence or by following the modified *McDonnel Douglas* framework, also known as the "pretext method" of indirect proof. See *Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312-13 (5th Cir. 2004)*. "Direct evidence" in the employment discrimination context is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Brown v. E. Miss. Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993)*. Direct evidence does not include " stray remarks in the workplace,' statements by nondecisionmakers.' or

Case 4:05-cv-03437   Document 31-10   Filed on 07/14/06 in TXSD   Page 6 of 8

Page 5
2005 U.S. Dist. LEXIS 3977, *

statements by decisionmakers unrelated to the decisional process itself.'" *Nouanesengsy v. City of Arlington*, 2003 U.S. Dist. LEXIS 17531, No. 4:01-CV-1009-Y, 2003 WL 214485596, at *2 (N.D. Tex. Mar. 12, 2003) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989) (O'Connor, J., concurring)); *see also Byrom v. Accenture, Ltd.*, 2003 U.S. Dist. LEXIS 17118, No. 3:01-CV-0124-N, 2003 WL 22255669, at *3 (N.D. Tex. Sept. 29, 2003) ("statements which merely suggest discriminatory motive are not sufficient to constitute [*6] direct evidence of discrimination and avoid the burden-shifting framework of *McDonnell Douglas*."). Assuming, as this Court must, that Houser use the term "boy" on one occasion, this stray remark simply does not constitute direct evidence of discrimination. Houser's comment is not alleged to be related to a decisional process or discriminatory act. *Taylor v. UPS of Am., Inc.*, 2003 U.S. Dist. LEXIS 23510, No. 3:02-CV-2536-G, 2003 WL 23119145, at *4, *6 (N.D. Tex. Dec. 31, 2003) (applying *McDonnell Douglas* test despite plaintiff's allegation that the use of the term "boy" constitutes direct evidence of discrimination). Houser's alleged comment in 1990 regarding Mexicans is likewise a stray remark and not direct evidence of discrimination. Moreover, any claim directly based on that remark would be time barred. *See AMTRAK v. Morgan*, 536 U.S. 101, 110, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002) [HN4] ("'A discrete retaliatory or discriminatory act 'occurred' on the day that it happened.' A party, therefore, must file a charge within either 180 or 300 days of the act or lose the ability to recover for it.").

[HN5] Lacking direct evidence of discrimination, the Court analyzes employment [*7] discrimination claims, including allegations of race-based discrimination, under the burden-shifting framework established in *McDonnell Douglas* and modified in *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312-13 (5th Cir. 2004). As the Fifth Circuit explained in *Rachid*, the modified *McDonnell Douglas* test requires the following steps:

> Under this integrated approach, called, for simplicity, the modified *McDonnell Douglas* approach: the plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative).'"

*Id.* at 312 (internal cites omitted). [*8]

### C. House and Rosales Do Not Establish a Prima Facie Case of Discrimination

[HN6] In order to establish a prima facie case of race-based discrimination under Title VII, a plaintiff must show that he: "(1) belongs to a protected group; (2) was qualified for his position; (3) was dismissed or suffered an adverse employment action; and (4) was replaced with a similarly qualified person who was not a member of the employee's protected group." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); *see also Pegram v. Honeywell*, 361 F.3d 272, 281 (5th Cir. 2004). The Fifth Circuit has cautioned that "to establish a prima facie case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981) ("the burden of establishing a prima facie case of disparate treatment is not onerous").

However, [HN7] "Title VII was designed to address ultimate employment decisions, not to address every decision [*9] made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995). "'Ultimate employment decisions' include acts such as hiring, granting leave, discharging, promoting, and compensating.'" *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997) (internal cites omitted). The Fifth Circuit has explained that without such a restrictive definition of adverse employment action, "the Equal Employment Opportunity Commission, already staggering under an avalanche of filings too heavy for it to cope with, would be crushed, and serious complaints would be lost among the trivial." *Burger v. Cent. Apartment Mgmt.*, 168 F.3d 875, 879 (5th Cir. 1999) (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).

In the instant matter, House and Rosales both allege the same four discriminatory acts by TXI: (1) inferior load assignments, which resulted in lower bonuses; (2) receipt of inferior trucks; (3) placement of inferior tires on their trucks; and (4) improper maintenance of their

trucks. Neither House nor Rosales claims [*10] that any of these actions impeded their ability to perform the functions of the job. [HN8] The Fifth Circuit has consistently and unambiguously rejected attempts to expand the definition of "adverse employment action" to include claims regarding working conditions, such as the alleged acts of TXI regarding House's and Rosales' vehicles and work assignments. *See Benningfield v. City of Houston, 157 F.3d 369, 376-77 (5th Cir. 1998)* (holding that non-payment of overtime was administrative matter that did not constitute employment action). House's and Rosales' claims of discrimination regarding truck assignments, maintenance, and tire replacement do not constitute "ultimate employment actions" under Fifth Circuit precedent. Accordingly, House and Rosales have failed to raise a prima facie case concerning those claims, and summary judgment is appropriate.

For example, in *Wayne v. Dallas Morning News*, an employee sued her employer for racial discrimination in violation of Title VII alleging, in part, that she was improperly assigned "low revenue generating accounts which do not allow for substantive bonus opportunities enjoyed by white sales representatives assigned to more [*11] lucrative accounts." *Wayne v. Dallas Morning News, 78 F. Supp. 2d 571, 584 (N.D. Tex. 1999)*. There, the court held that no "adverse employment action" was alleged, since the plaintiff presented only conclusory allegations that the assignment of client accounts resulted in lower pay. *Id.* In so holding, the court explained that:

> The actions of the Morning News in assigning, or not assigning, certain accounts to Wayne are not, standing alone, ultimate employment decisions within the purview of Title VII. To the contrary, the court holds that [HN9] account assignments are administrative decisions not properly characterized as "ultimate employment decisions." Therefore, Wayne's allegations and evidence showing that she was not assigned particular accounts will not, without more, permit her to survive summary judgment.

*Id.* (citations omitted).

Similarly, in *Kahn v. Department of Treasury*, the Eastern District of Louisiana considered a Title VII claim that an IRS agent was discriminated against on the basis of age, in part, by being removed from a "high impact" work assignment and by receiving a lower bonus than other employees. *Kahn v. Dep't of Treasury, 1999 U.S. Dist. LEXIS 19571, No. Civ. A. 98-2652, 1999 WL 1220765, [*12] at *1 (E.D. La. Dec. 20, 1999)*. There, the court granted the defendant's motion to dismiss, holding that:

> The actions of which plaintiff complains of -- [HN10] unfair performance evaluations, COP leave delay, reassignment and additional work assignments; a (possibly public) employee reprimand, negative feedback on a project, lack of specific performance standards and a lower bonus than other employees -- are "interlocutory or mediate decisions having no immediate effect upon employment conditions," which do not amount to "ultimate employment decisions" proscribed by Title VII under *Dollis*.

*1999 U.S. Dist. LEXIS 19571, [WL] at *2* (citations omitted). Like the plaintiffs in *Wayne* and *Kahn*, House and Rosales present claims that do not rise to the level of "adverse employment actions" for the purpose of establishing a prima facie case of discrimination.

In addition to the claims both plaintiffs advance, House also claims TXI discriminated against him by: (1) not selecting him for three positions for which he was qualified; (2) failing promptly to report minorities' injuries, so that minorities' injuries would not be covered by Workers Compensation; and (3) failing timely to award him a "safety [*13] watch" for safe driving on the job. Unlike the work conditions claims House makes, [HN11] a failure to hire him into a position could be an "adverse employment action." However, the undisputed summary judgment evidence shows that two of the three positions were filled by blacks. To establish a prima facie case, the position must have been filled by a person of a race different from the plaintiff's race. *See Pegram, 361 F.3d at 281; Celestine v. Petroleos de Venzuella SA, 266 F.3d 343, 354-55 (5th Cir. 2001)*. The remaining position was filled by an Hispanic. House never makes any claim that Hispanics were treated better than blacks. Accordingly, House has also failed to raise a prima facie case for discrimination regarding the three job positions he was denied.

House also claims that TXI's failure promptly to report his injuries resulting in loss of coverage under Worker Compensation law is discrimination. TXI claims there is no evidence that any white employee was treated more favorably with regard to Workers Compensation claims than House was. House wholly fails to respond to this argument. In addition, [HN12] the Court finds that the reporting of injuries is [*14] an administrative matter

which is not an ultimate employment decision. *See Benningfield, 157 F.3d at 376-77.* Accordingly, House has failed to establish a prima facie case of discrimination as to the delayed Workers Compensation reporting.

Finally, House claims that he did not [HN13] timely receive a watch as an award for safe driving on the job. This is simply not an ultimate employment decision. *Washington v. Veneman, 109 Fed. Appx. 685, 689 (5th Cir. 2004)* (outright denial of a performance award is not an adverse employment action). Accordingly, House has failed to establish a prima facie case of discrimination as to the delayed receipt of the safety award.

## CONCLUSION

House and Rosales effectively ask the Court to hold that every work condition that might eventually cause receipt of a lower incentive bonus than a white employee constitutes an ultimate employment decision and the basis for a prima facie case of discrimination. In sum, the Court is asked to deem an ultimate employment decision the dispatcher's allegedly improper allocation of work assignments, wholly ignoring the long chain of events that must follow for the dispatcher's determination [*15] to impact House's and Rosales' income. n3 House and Rosales also ask the Court to consider minor inconveniences to be ultimate employment decisions. Of course, such a holding would elevate individual administrative decisions into evidence of discrimination whenever they are detrimental to (or perceived as being detrimental to) employees covered under Title VII. Such a holding would greatly expand the reach of federal discrimination law, and would ignore the long line of cases establishing that [HN14] individual work assignments do not "rise above having mere tangential effect on a possible future ultimate employment decision." *Mattern, 104 F.3d at 708.* The Court holds that Conley's incentive claims do not address ultimate employment decisions, and accordingly, Conley has not established a prima facie case of discrimination. TXI's motions for summary judgment are granted.

n3 For House and Rosales to be correct about the effect of the assignments on his income, the assignments must have led to smaller load deliveries, ensuring in a lower "yard per hour" average, that, when applied to the Production Incentive Table, resulted in a smaller hourly rate being added to House's and Rosales' base earnings than that of similarly situated employees.

[*16]

SIGNED this 14 day of March, 2005.

David C. Godbey

United States District Judge

## FINAL JUDGMENT

By separate Order of this same date, the Court has granted the Defendant's Motions for Summary Judgment. Accordingly, Plaintiffs Geronimo Rosales' and Curtis House's claims in this action are dismissed with prejudice. Defendant is awarded costs of court. All relief not expressly granted is denied. This is a final judgment.

SIGNED this 14 day of March, 2005.

David C. Godbey

United States District Judge