# EXHIBIT C



Not Reported in F.Supp.2d                                                                                                          Page 1
Not Reported in F.Supp.2d, 2005 WL 1924372 (S.D.Tex.)
**(Cite as: 2005 WL 1924372 (S.D.Tex.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. Texas, Corpus Christi Division.
Brenda A. RICKETTS, Plaintiff,
v.
CHAMPION CHEVROLET Defendant.
**No. Civ.A. C-04-242.**

Aug. 11, 2005.

Liana E. Gonzales, Thomas E. Baker, Jr., Kathleen L. Day, Attorneys at Law, Phillip A. McKinney, McKinney & Asoc., Corpus Christi, TX, for Plaintiff.

Ruth Ann Daniels, Gibson McClure et al., Dallas, TX, for Defendant.

*ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

JACK, J.

*1 Plaintiff filed suit against Defendant on May 3, 2004 claiming gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. Defendant filed a Motion for Summary Judgment on June 14, 2005. Plaintiff filed a Response to Defendant's Motion for Summary Judgment on July 5, 2005. For the reasons stated herein, the Defendant's Motion for Summary Judgment is granted.

I. JURISDICTION

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

II. UNDISPUTED FACTS

In 2002, Plaintiff began working for Vista Chevrolet, which after a change in ownership became Champion Chevrolet ("Champion"). (Pl.Depo., p. 10). Plaintiff was an at-will employee. *Id.* at 102. She worked in the Finance and Insurance ("F & I") Department, where she arranged financing and sold warranties, credit life and disability insurance, and theft protection devices for vehicles sold at the dealership. *Id.* at 28-29.

F & I performance is measured against a projection generated by the dealership. (Pl. Depo., pp. 134-36; Bregman Depo., pp. 29, 32). It is measured in terms of actual profit of the dealership or "per vehicle revenue" ("PVR"), and the Product Index, referring to the total number of products sold per vehicle. *Id.*

In approximately December 2003, Rick Ford became General Manager ("GM") of Champion. (Ford Depo., p. 43). Superior F & I performance was a priority for Mr. Ford. (Ford Aff. ¶ 6; Pl. Depo., pp. 41-42).

During Mr. Ford's interview process and initial evaluation periods at Champion, he reviewed each department with Jason Lacher, District Finance Director. (Ford Aff. ¶ 7). Mr. Lacher pointed out that the F & I Department at Champion had been underperforming for a long time and needed substantial improvement. *Id.* Based upon what Mr. Ford observed after becoming GM, he agreed with this assessment. *Id.* The department consistently missed its PVR and Product Index targets. *Id.*

In 2003, Champion's PVR goal was only $850, and they did not always hit the goal. (Williams Depo., pp. 37-38). While Plaintiff was at Champion, the department consistently missed the target by about $350. (Pl.Depo., pp. 42-43). [FN1] Once Mr. Ford became GM, he raised the target PVR to $1,100. [FN2] (Ford Aff. ¶ 7).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                   Page 2
Not Reported in F.Supp.2d, 2005 WL 1924372 (S.D.Tex.)
**(Cite as: 2005 WL 1924372 (S.D.Tex.))**

FN1. Plaintiff states that the F & I department set a record for performance in December; however, the testimony cited actually shows that despite the "record" performance, the target PVR was still missed by $150 and the performance was still in the fourth quartile. (Ford Depo., pp. 151- 52).

FN2. Mr. Ford's affidavit states the target PVR was raised to $1,100 "per month." (Ford Aff. ¶ 7). This appears to be a typographical error or an incomplete sentence as it is apparent from the context that the target PVR was raised to $1,100 per vehicle.

Both Mr. Lacher and Mr. Ford pointed out to Plaintiff that the F & I numbers were below target. (Ford Aff. ¶ 9 & Pl. Depo., pp. 89-90). Mr. Lacher reviewed the F & I numbers every month, and always told Plaintiff when her numbers were below the projected goal. (Pl. Depo., pp. 89-90, 162-64 & Ex. 27). Mr. McClarty, the acting GM before Mr. Ford took over, complained that Plaintiff was not aggressive enough on car deals. (Williams Depo., pp. 10-12, 32-33). When Mr. Ford became GM, Champion's F & I Department had consistently performed in the lowest quartile in the region. (Ford Aff. ¶ 7). In fact, while Plaintiff worked for Champion, the best it ever ranked in F & I performance was approximately in the middle of the district. (Pl.Depo., p. 171).

*2 On December 15, 2003, Mr. Ford e-mailed plaintiff about the low F & I numbers and asked her to formulate a plan for improvement by the end of the month. (Pl. Depo., p. 165 & Ex. 27). Plaintiff received the request, but never complied. *Id.* at 169.

Because of these performance issues, Mr. Ford restructured the F & I Department and made other changes at Champion, which affected Plaintiff's compensation plan. (Ford Aff. ¶¶ 4, 6). One of the changes Mr. Ford made was hiring Monty Meave ("Meave") as F & I Director. Mr. Meave was hired to manage the department and to communicate with lenders to approve deals, but not to contract the deals himself. (Ford Aff. ¶ 8). The F & I Managers were then to report directly to Mr. Meave. *Id.* at ¶ 6.

On January 8, 2004, Mr. Ford told Plaintiff he was hiring Mr. Meave because he wanted someone with more experience to run the F & I Department. (Pl.Depo., pp. 43-44). Mr. Ford offered Plaintiff the option to stay at Champion as an F & I Manager or to transfer to another dealership, Champion Ford/Mazda, as an F & I Manager. *Id.* at 46-47. He told her he believed it would be in her best interest to transfer to the other dealership. (Pl. Depo., pp. 46-47; Ford Aff. ¶ 4).

Mr. Ford testified that he selected Mr. Meave as F & I Director at Champion because he had talent and experience critical to the position. *Id.* at ¶ 8. Mr. Ford had observed Mr. Meave's performance at another dealership, and believed he was the best choice for the F & I Director at Champion. *Id.* Mr. Meave had worked for Ford Motor Credit and had extensive knowledge of structuring deals with captive financing. *Id.* In addition, Mr. Meave demonstrated expertise at developing the skills of F & I Managers reporting to him, which maximized their personal commissions and revenue for the dealership. *Id.* Plaintiff admits that this is an important ability for someone in charge of the F & I Department. (Pl.Depo., p. 150). She also admits that Mr. Meave had experience she herself lacked because he had worked in finance for a major automotive manufacturer. *Id.* at 32, 54. Finally, Plaintiff admits that Mr. Meave's position was not the same as hers when she worked at Champion. *Id.* at 60-61.

Mr. Ford testified that his sole reason for the changes at Champion was to improve performance and revenues. (Ford Aff. ¶ 13). As a result of the changes, Champion's profitability increased drastically. *Id.* "Flash Reports" reflecting F & I performance during Plaintiff's employment at Champion are consistently lower for each month in 2003 than for the corresponding months in 2004 after Mr. Meave became F & I Director. (Pl. Depo., pp. 138-40 & Exs. 16- 21). Additionally, the average PVR is now up to approximately $1,100 to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

$1,200 per car. (Bregman Depo., p. 32). The F & I Department now consistently performs in the top quartile of the region and in 2004, improved to fourth in the nation. (Ford Aff. ¶ 7; Williams Depo., pp. 31-32).

III. PLAINTIFF'S ALLEGATIONS

*3 Plaintiff claims that Mr. Ford hired Mr. Meave as F & I Director and demoted her because she is a woman. (Pl.Depo., p. 13). Plaintiff basis her claim on various comments by Mr. Ford that referenced plaintiff's gender in an unflattering way. For example, plaintiff claims that Mr. Ford stated "that he was not married so he wouldn't have to deal or speak to a woman." (Pl.Depo., p. 14). Later, when Plaintiff mentioned "something about the sun rising in the east and setting in the west," Mr. Ford allegedly said he was "impressed" and could not believe that Plaintiff knew that information "because most women don't." *Id.* On another occasion, Mr. Ford asked Plaintiff to take notes in a manager's meeting. (Pl.Depo., pp. 16-17). Another time, Mr. Ford asked Plaintiff why she had taken so long for lunch. (Pl.Depo., p. 20). When she asked him why he gave her such a hard time, Mr. Ford allegedly responded, "I wouldn't give you a hard time if I didn't like you." *Id.* Mr. Ford then allegedly volunteered that there were people he did not like. *Id.* at 20-21. On another occasion, Mr. Ford allegedly asked Plaintiff if she was Mr. Williams' mother because she spent so much time talking to him every morning. (Pl.Depo., p. 21).

Plaintiff also complains that Mr. Ford once told her to let him know whenever she left the dealership. (Pl.Depo., pp. 167-68). In addition, Mr. Ford asked plaintiff's male co-workers to lunch and dinner occasionally, but never invited her. *Id.* at 15. On one occasion, Mr. Ford asked her to remain at the dealership and work deals while he took managers and sales consultants to an off-site training meeting. (Pl.Depo., pp. 25-27).

Plaintiff never complained to Champion management that she believed any of Mr. Ford's comments were discriminatory, although she knew about the company's avenues for reporting perceived discrimination or harassment. *Id.* at 23, 161, 213-14.

IV. SUMMARY JUDGMENT STANDARD

Summary judgment is required against a party who fails to make a showing sufficient to establish the existence of an element essential to her case and on which she will bear the burden of proof at trial. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant makes the initial showing that no evidence supports the non-movant's case, the non-movant must present competent evidence that a genuine issue of material fact issue exits. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences to be drawn from the underlying facts in the materials presented by the parties must be viewed in the light most favorable to the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent evidence to defeat a summary judgment motion. *TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir.2002); *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). In the employment discrimination context, the ultimate question for summary judgment is whether a rational fact finder could find that the employer intentionally discriminated against the plaintiff because of membership in a protected class. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (*citing Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

V. AT-WILL DOCTRINE

*4 In Texas, the longstanding rule is that employment at-will is terminable at any time with or without cause in the absence of an express agreement to the contrary. *Coburn Supply Co., v. Kohler Co..,* 342 F.3d 372, 375 (5th Cir.2003) ( *citing W.G. Pettigrew Distrib. Co. v. Borden, Inc.,* 976 F.Supp. 1043, 1054 (S.D.Tex.1996)). A party in Texas may terminate an at-will employment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 4
Not Reported in F.Supp.2d, 2005 WL 1924372 (S.D.Tex.)
**(Cite as: 2005 WL 1924372 (S.D.Tex.))**

relationship for a good reason, a bad reason, or no reason at all. *Id.* (*citing Perez v. Vinnell Corp.,* 763 F.Supp. 199, 200 (S.D.Tex.1991)).

VI. DISCRIMINATION STANDARD

A Title VII plaintiff always bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her. *Reeves,* 530 U.S. at 138-43 (*citing Burdine,* 450 U.S. at 253). Absent direct evidence of discrimination, [FN3] she must first prove a *prima facie* case by a preponderance of the evidence. *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir.1996) (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The *prima facie* burden is usually satisfied by showing that: 1) she is a member of a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) she was replaced by a person outside the protected group, or others similarly situated were treated more favorably. *Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir.2005).

> FN3. Plaintiff argues that comments made by Mr. Ford constitute direct evidence of discrimination. (Pl. Resp. to Def. Mot. for Summ. J., p. 11). However, no evidence is presented that any of Mr. Ford's comments were related to the employment decision at issue and no evidence is presented that many of the comments were even related to Plaintiff's protected class. *See* Section IV, C, 4 herein. Mr. Ford's remarks are stray remarks and do not constitute even indirect evidence of discrimination. *See id.*

Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Burdine,* 450 U.S. at 254; *LaPierre,* 86 F.3d at 448; *Meinecke v. H & R Block of Houston,* 66 F.3d 77, 83 (5th Cir.1995). If the employer meets this burden, the *prima facie* case dissolves, and the burden shifts back to the plaintiff to establish that the proffered reason is a pretext for discrimination.

*St. Mary's Honor Ctr.,* 509 U.S. at 507-08; *Meinecke,* 66 F.3d at 83. The plaintiff retains the ultimate burden of persuasion throughout the case. *Burdine,* 450 U.S. at 256; *Meinecke,* 66 F.3d at 83. Whether summary judgment is appropriate depends on a number of factors, including "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that may be properly considered...." *Reeves,* 530 U.S. at 148-49.

A. PRIMA FACIE CASE

Defendant argues that Plaintiff cannot prove a *prima facie* case of discrimination because she fails to show she was replaced by a person outside the protected group or others similarly situated were treated more favorably. (Def. Mot. for Summ. J., pp. 12-14). A genuine issue of material fact, however, does exist on this issue because it is unclear from the evidence presented whether Plaintiff was the F & I Director, as Plaintiff argues and as her business cards indicated, (Pl. Resp. to Def. Mot. for Summ. J., p. 4; Pl. Depo., pp. 194-95 & Ex. 32), or whether she was an F & I Manager as Defendant argues and as her pay status indicated (Def. Mot. for Summ. J., p. 13; Pl. Depo. pp. 118-19, 157 & Exs. 9, 11). Plaintiff's actual position is critical to determining whether she was "replaced" and in fact, suffered an adverse employment action. [FN4] However, even assuming Plaintiff was the F & I Director and can prove a *prima facie* case of discrimination, summary judgment is appropriate in this case as set forth below.

> FN4. Defendant argues Plaintiff was an F & I Manager. Plaintiff's and Mr. Williams' payroll records reflect that they were paid under the same title code, 349N122, and were paid under Champion's Terms and Conditions for the F & I Manager Pay Plan. (Pl. Depo., pp. 107, 112-13, 118-19, 157 & Exs. 7, 9 & 11). F & I Director Mr. Meave was paid under title code 349A111 and was paid pursuant to the F & I Director Pay Plan. *Id.* at 123, 157 & Exs.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:05-cv-03437   Document 55-3   Filed on 11/30/06 in TXSD   Page 6 of 11

Not Reported in F.Supp.2d                                                                                        Page 5
Not Reported in F.Supp.2d, 2005 WL 1924372 (S.D.Tex.)
**(Cite as: 2005 WL 1924372 (S.D.Tex.))**

8, 12. If this is true, Plaintiff cannot show that she was replaced; instead, Mr. Meave took a newly created F & I Director position. Additionally, if she was an F & I Manager, she cannot show others similarly situated were treated more favorably. Mr. Ford's changes affected male and female personnel. He demoted a male sales manager, Don Stryk, and reduced his salary accordingly. (Ford Aff. ¶ 10; Bregman Depo., p. 59). He terminated a male Service Manager, Eliseo Yruegaz, and a male Parts Manager, Glen Rachui, resigned in lieu of termination. (Ford Aff. ¶ 10). Whereas, a female internet manager, Brittany Peese, who was performing satisfactorily had no change in her position. *Id.* at ¶ 11.

On the other hand, Plaintiff argues that she was the F & I Director at Champion Chevrolet and the only female Director at the dealership. (Pl.Depo., pp. 226-27). Dustin Williams, a male, served as the Finance Manager. (Williams Depo., p. 7). He considered Plaintiff the Director and his supervisor. *Id.* at 7-8. Other employees also considered her the F & I Director, were introduced to her as such, and knew her to be a supervisor in the dealership. (Bregman Depo., pp. 10-11, 33-34; Vega Depo. pp. 15-16). Business cards distributed to Plaintiff showed her to be the F & I Director. (Pl. Depo., pp. 194-95 & Ex. 32). Plaintiff's pay was structured so that she received commissions on deals she contracted herself, as well as on the department's overall performance. (Ford Aff. ¶ 5; Pl. Depo., p. 55). Mr. Williams received commissions only on his own contracted deals. (Williams Depo., p. 24). If this is true, Plaintiff was "replaced" by a person outside her protected group and can at least prove a *prima facie* case.

B. DEFENDANT'S LEGITIMATE, NON-DISCRIMINATORY REASON

**\*5** Defendant has stated a neutral reason for its decision. Under Plaintiff's direction, the F & I department had consistently fallen short of its PVR and Product Index goals. (Ford Aff. ¶ 7). While Plaintiff was at Champion, the department consistently missed its $850 target by about $350. (Pl.Depo., pp. 42-43).

Not only were Plaintiff's PVR and Product Index numbers well below target, but she failed to demonstrate any strategy for improvement in the future. (Ford Aff. ¶ 9). On December 15, 2003, Ford e-mailed her about the low F & I numbers and asked her to formulate a plan for improvement by the end of the month. (Pl. Depo., p. 165 & Ex. 27). Plaintiff received the request, but never complied. *Id.* at 169.

An employee's failure to meet performance criteria is a legitimate, non-discriminatory explanation for an employment decision. *Sreeram v. La. State Univ. Med. Ctr.-Shreveport,* 188 F.3d 314, 320 (5th Cir.1999); *see also Rubinstein v. Adm'rs of the Tulane Educ. Fund,* 218 F.3d 392, 400 (5th Cir.2000) (professor's poor teaching skills was a legitimate, non-discriminatory reason for employment decision).

Plaintiff's failure to meet Champion's PVR target was a legitimate, non-discriminatory reason to hire an F & I Director who could increase sales revenues.

C. PLAINTIFF'S BURDEN TO SHOW PRETEXT

Plaintiff argues that Mr. Ford's hiring of Mr. Meave was merely a pretext to demote her because she is a woman. However, the mere fact that an employer selects a male instead of a female does not raise a genuine issue of fact regarding discriminatory intent. *Septimus,* 399 F.3d at 610.

In *Sreeram,* for example, a female surgical resident was terminated because she was not performing at expected levels, despite her objective qualifications. *Sreeram,* 188 F.3d at 319. The fact that the hospital retained the male resident with lower training scores, but better practical skills, did not raise a genuine fact issue regarding pretext. *Id.* at 321.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Moreover, a plaintiff's subjective belief of discrimination, no matter how genuinely held, is not competent evidence. *Septimus,* 399 F.3d at 610; *Roberson v. Alltel Info. Servs.,* 373 F.3d 647, 654 (5th Cir.2004). Once the employer articulates a neutral explanation, subjective beliefs and mere suspicion do not create a fact issue as to pretext. *Auguster v. Vermilion Parish Sch. Bd.,* 249 F.3d 400, 402 (5th Cir.2001); *Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 152 (5th Cir.1995); *Anderson v. Douglas & Lomason Co.,* 26 F.3d 1277, 1298 (5th Cir.1994). Thus, subjective belief and unsubstantiated assertions cannot raise an inference of discrimination sufficient to survive summary judgment. *See Lawrence v. Univ. of Tex. Med. Branch at Galveston,* 163 F.3d 309, 313 (5th Cir.1999); *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 42 (5th Cir.1996). The fact that plaintiff believes Mr. Ford discriminated against her does not raise a genuine issue of material fact to preclude summary judgment.

1. CLEARLY BETTER QUALIFIED

*6 In order to defeat summary judgment, a plaintiff must show that he or she was *clearly better qualified* than the person selected. *Odom v. Frank,* 3 F.3d 839, 847 (5th Cir.1993) (emphasis added). The bar is high for such a showing because differences in qualifications are generally not probative of discrimination unless the disparities are of such weight and significance that no reasonable person, exercising impartial judgment, could have chosen the person selected over the plaintiff for the job in question. *Celestine v. Petroleos de Venezuella, SA,* 266 F.3d 343, 357 (5th Cir.2001). In order to show that an employer's choice was merely a pretext for discrimination, and defeat summary judgment, a plaintiff's qualifications must be so superior to those of the person selected that they "virtually jump off the page and slap [the Court] in the face." *EEOC v. La. Office of Cmty. Servs.,* 47 F.3d 1438, 1445 (5th Cir.1995).

Plaintiff does not attempt to argue that she was clearly better qualified than Mr. Meave. (Pl. Resp. to Def. Mot. for Summ. J., p. 17). In fact, Plaintiff admits that Mr. Meave had experience that she lacked. (Pl.Depo., p. 54). Mr. Meave had worked in finance for Ford Motor Credit, a major automotive manufacturer, and had extensive knowledge of structuring deals with captive financing. (Pl. Depo., p. 32; Ford Aff. ¶ 8). Mr. Ford selected Mr. Meave, after observing his performance at another dealership, because he had talent and experience critical to the F & I Director position. (Ford Aff. ¶ 8). In addition, Mr. Meave had demonstrated expertise at developing the skills of F & I Managers reporting to him, which in turn, maximized their personal commissions and revenue for the dealership. *Id.* Plaintiff admits that this is an important ability for someone in charge of the F & I Department. (Pl.Depo., p. 150).

In comparison, Plaintiff's PVR and Product Index numbers were well below target, and she failed to demonstrate a strategy for improvement in the future, even when Ford specifically requested her to do so. (Pl. Depo., pp. 89-90, 159- 60, 162-65, 169 & Ex. 27; Ford Aff. ¶ 9). Plaintiff fails to demonstrate that she was clearly better qualified than Mr. Meave.

2. FALSE EXPLANATION

Relying on *Sanders v. Anadarko Petroleum Corp.,* 2004 WL 1834601 (5th Cir.2004) (unpublished), plaintiff argues that she can establish pretext by presenting evidence that the employer's proffered explanation is false or unworthy of credence. For example, she points out that Mr. Ford told her it would be in her best interest to transfer to the other dealership, (Williams Depo., pp. 15-16; Bregman Depo., p. 23), and that two of her co-workers viewed the restructuring as a demotion for her. (Williams Depo., p. 17; Bregman Depo., p. 23).

This evidence addresses the issue of whether Plaintiff was the F & I Director or the F & I Manager when the restructuring took place, not whether or not she was replaced and suffered an adverse employment action. As such, this evidence is relevant to whether Plaintiff can establish a *prima facie* case of discrimination, but is not relevant to the issue of pretext.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3. PLAINTIFF'S PERFORMANCE

*7 Plaintiff next argues that Defendant's proffered reason was pretext because Plaintiff's performance was, in fact, good. (Pl. Resp. to Def. Mot. for Summ. J., p. 18). In support of this argument, Plaintiff offers the testimony of two co-workers and an office manager that Plaintiff was a good director. (Bregman Depo., pp. 12-15; Williams Depo., p. 17; Vega Depo., p. 16). None of these three witnesses, however, knew what Plaintiff's expected PVR goals or what PVR she was achieving. *See* (Pl. Resp. to Def. Mot. for Summ. J., pp. 18- 19). In contrast, Mr. Ford, as General Manager, had access to information necessary to judge plaintiff's job performance, and he testified that job performance is measured primarily on PVR. (Ford Aff. ¶¶ 6 & 7; Pl. Depo., pp. 134-36). Plaintiff's PVR was not up to expectations. (Ford Aff. ¶ 7; Pl. Depo., pp. 42-43; Williams Depo., pp. 37-38). [FN5]

> FN5. Plaintiff's disagreement with Mr. Ford's decision to hire Mr. Meave does not mean it was discriminatory. A plaintiff cannot raise a fact issue as to whether an employer discriminated by choosing one employee over another unless he demonstrates that the employer's decision was more than merely a bad business decision. *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 959 (5th Cir.1993). She must show a mistake of judgment large enough that one wonders whether it was a mistake at all. *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 814 (5th Cir.1991). In other words, courts do not review personnel decisions for their wisdom. *See Mato v. Baldauf,* 267 F.3d 444, 453 (5th Cir.2001). Unless the record shows that the plaintiff was clearly better qualified than the person chosen, personnel decisions are properly left to those whose own experience and expertise in the field qualify them to evaluate other personnel. *Id.*

In the present case, Mr. Ford's own experience and expertise uniquely qualified him to decide who should manage Champion's F & I Department. (Ford Aff. ¶ 6). Under Plaintiff's management, the department consistently missed the PVR target by about $350 and performed in the lowest quartile in the region. (Pl.Depo., pp. 42-43, 171). Under Mr. Meave's direction, the F & I Department's PVR was raised to $1,100 and with that increased PVR, it now consistently performs in the top quartile in the region. (Ford Aff. ¶ 7). Thus, Mr. Ford's decision was sound and raised no issues of pretext.

Plaintiff argues that she was doing a good job because Mr. Ford recommended that another employee, Dustin Williams, attend Finance Manager training, but he did not suggest that plaintiff needed this additional training. In addition, Mr. Ford did not include plaintiff in an off-site managers training meeting, but instead asked her to remain at the dealership with other sales people. [FN6] (Pl. Depo., pp. 25-27; Ford Depo., pp. 148-49 & Ex. 1). The fact that plaintiff did not need additional training does not equate with a finding that Plaintiff was doing a good job. Moreover, if Plaintiff was a director and not a manager, as she has argued, there would be no reason to include her in the manager training in the first place.

> FN6. Plaintiff's argument that her exclusion from an off-site training meeting means she was doing a good job, contradicts her attempted use of this incident as evidence of discrimination. (Pl. Resp. to Def. Mot. for Summ. J., p. 19).

Plaintiff argues that her good job performance is evidenced by her not being reprimanded for poor performance or placed on a performance improvement plan. (Pl. Resp. to Def. Mot. for Summ. J., p. 19; Ford Depo., pp. 144-47). Again, the fact that plaintiff was not reprimanded or placed on probation does not equate with a finding that she was doing a good job. [FN7]

> FN7. Furthermore, there is no requirement under Texas law that an at-will employee

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

be put on a performance improvement plan prior to termination. *See, e.g., Coburn*, 342 F.3d at 375; *Spinks v. Trugreen Landcare, L.L.C.*, 322 F.Supp.2d 784, 790-96 (S.D.Tex.2004).

Finally, Plaintiff argues that although Mr. Ford felt Plaintiff lacked proper contracting skills and did not spend enough time with customers, he allegedly contradicted this statement by saying that it was in her "best interest" to leave and go to a higher volume dealership which would "afford her the opportunity to see more customers and contract more deals." (Pl. Resp. to Def. Mot. for Summ. J., p. 18; Pl. Depo., pp. 46-47; Ford. Aff. ¶ 4). This statement does not evidence that Plaintiff performed her job well. It is only a reasoned observation that a dealership with higher volume would have potentially more deals.

Plaintiff fails to demonstrate that Defendant made contradictory statements, let alone that these statements establish pretext.

4. STRAY REMARKS

It is well settled in the Fifth Circuit that stray remarks unconnected to an employment decision cannot create a fact issue regarding a discriminatory intent and are insufficient to defeat summary judgment. *Auguster*, 249 F.3d at 404-06; *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir.1999). Plaintiff argues that the stray remarks doctrine was "essentially overruled" by the Supreme Court in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). (Pl. Resp. to Def. Mot. for Summ. J., p. 21). However, the Fifth Circuit expressly interpreted *Reeves* as not overruling its stray remarks jurisprudence, especially in instances where the plaintiff fails to produce substantial evidence of pretext. *Auguster*, 249 F.3d at 405 (*citing Rubinstein*, 218 F.3d at 400-01) (applying the stray remarks doctrine where the plaintiff failed to establish that each of the defendant's articulated justifications was pretext).

*8 Remarks are not sufficient evidence of workplace discrimination unless they 1) are related to the protected characteristic; 2) are proximate in time to the adverse employment action; 3) are made by an individual with authority over the decision; and 4) are related to the employment decision at issue. *Auguster*, 249 F.3d at 405 (citations omitted). In short, the comments must be direct and unambiguous, allowing a reasonable jury to conclude, without inferences or presumptions, that a protected category was a factor in the employer's decision. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir.1996).

For comments to constitute evidence of pretext, they must explicitly convey discriminatory animus. Without some connection between the alleged comments and the adverse employment decision, the comments do not create a genuine issue of material fact. *See Scales*, 181 F.3d at 712. Absent this connection, comments far more blatantly discriminatory than those alleged by Plaintiff in the present case have been held insufficient evidence of discrimination. *See, e.g., Sreeram*, 188 F.3d at 319-20 (comments by supervising doctors that a female resident was "not accepted well by the good old boys," had "cultural" difficulties, "needed deodorant," and that women residents do not have time to "do a lot of things girls need to do" did not support an inference of pretext); *Ray v. Tandem Computers. Inc.*, 63 F.3d 429, 434 (5th Cir.1995) (male supervisor's remarks that they were "going to get rid of the 'c --- in the office' " and that a co-worker was the "better man for the job" did not combine to support an inference of sex discrimination).

Plaintiff offers only a few isolated comments that are far less offensive than the examples discussed above. For example, Plaintiff alleges that Mr. Ford once stated that he did not want "to deal or speak to a woman." (Pl.Depo., pp. 13-14). She also alleges that when she mentioned "the sun rising in the east and setting in the west," Ford allegedly said he was "impressed" and could not believe Plaintiff knew that information "because most women don't." *Id.* Plaintiff provides no evidence showing these comments are connected in any way to the employment decision at issue.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 9
Not Reported in F.Supp.2d, 2005 WL 1924372 (S.D.Tex.)
**(Cite as: 2005 WL 1924372 (S.D.Tex.))**

Next, Plaintiff alleges that Mr. Ford once asked her if she was Mr. Williams' mother because she spent so much time talking with him every morning. Again, no evidence relates this comment to the employment decision at issue. Furthermore, Plaintiff admits Mr. Ford's comment could have been his way of telling her to spend less time in Mr. Williams' office and more time in her own. (Pl.Depo., pp. 21, 24-25).

Similarly, Plaintiff complains that Mr. Ford once asked her why she had taken so long for lunch and told her, "I wouldn't give you a hard time if I didn't like you." No evidence relates this comment to her protected class or to the employment decision at issue.

*9 Finally, Plaintiff alleges that Mr. Ford volunteered that he would be getting rid of people he did not like. (Pl.Depo., pp. 20-21). This comment is not tied to Plaintiff's protected class. Moreover, in Texas, an at-will employee can be terminated for any reason or no reason at all. *See Coburn,* 342 F.3d at 375.

Plaintiff cites to no other gender-related comments by Mr. Ford. (Pl.Depo., p. 15). There is no evidence that Mr. Ford made derogatory comments about plaintiff. There is no evidence to link Mr. Ford's comments to the decision to hire Mr. Meave. Finally, there is no evidence to suggest that the outcome would have been different if Plaintiff had been a male employee.

5. OTHER INCIDENTS

Plaintiff alleges that certain conduct of Mr. Ford evidences pretext. For example, she complains that Mr. Ford once told her to let him know whenever she left the dealership; however, she admits he made a similar request of Mr. Bregman, a male employee. (Pl. Depo., pp. 167-68). Plaintiff also alleges that Mr. Ford once asked her to take notes in a manager's meeting, but admits he made the same request of male employees on occasion. (Pl. Depo., pp. 16-17; Williams Depo., pp. 28-29). She further complains that Mr. Ford asked her male co-workers out to lunch and dinner occasionally without inviting her, but he also did not invite other male employees. (Pl. Depo., p. 15; Bregman Depo., p. 63). Similarly, Mr. Ford once asked Plaintiff and some seasoned male salespeople to remain at the dealership and work deals while he took other managers and sales consultants to an off-site training meeting. (Pl.Depo., pp. 25-27).

In all of these instances, male employees were treated the same as Plaintiff. This gender-neutral conduct fails to raise a fact issue regarding pretext, and Plaintiff's subjective belief of discrimination is not competent evidence. *Septimus,* 399 F.3d at 610.

V. COSTS AND ATTORNEYS' FEES

A prevailing party is entitled to costs other than attorneys' fees unless the court otherwise directs. Fed.R.Civ.P. 54; *see Byers v. The Dallas Morning News, Inc.,* 209 F.3d 419, 430 (5th Cir.2000). As the prevailing party in this matter, Defendant is entitled to recover its costs.

Recovery of attorneys' fees by a defendant in a Title VII action may only be had upon a finding that the plaintiff's claim was frivolous, groundless, or made in bad faith. *Commonwealth Oil Refining Co., Inc. v. EEOC,* 720 F.3d 1383, 1385 (5th Cir.1983) ( *Christianburg Garment Co., v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). This stringent standard does not apply to the award of costs. *Id.* Defendant has set forth no argument supporting its entitlement to an award of attorneys' fees and, although the Plaintiff's claim does not survive summary judgment, it was not frivolous, groundless, or made in bad faith. *See Byers,* 209 F.3d at 430 (affirming the award of costs, excluding attorneys' fees, to a prevailing defendant in a Title VII summary judgment proceeding). Therefore, the Defendant is not entitled to its attorneys' fees.

VI. CONCLUSION

*10 Accordingly, Defendant's Motion for Summary Judgment (D.E.40) is GRANTED and Plaintiff's claims are dismissed with prejudice. Defendant is awarded its costs but not its attorneys' fees.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 10

Not Reported in F.Supp.2d, 2005 WL 1924372 (S.D.Tex.)

**(Cite as: 2005 WL 1924372 (S.D.Tex.))**

ORDERED.

Not Reported in F.Supp.2d, 2005 WL 1924372 (S.D.Tex.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2298392 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment (Jul. 5, 2005)Original Image of this Document with Appendix (PDF)

• 2004 WL 2621303 (Trial Pleading) Plaintiff's Second Amended Complaint (Jul. 1, 2004)Original Image of this Document (PDF)

• 2004 WL 2621291 (Trial Pleading) Plaintiff's First Amended Complaint (Jun. 27, 2004)Original Image of this Document with Appendix (PDF)

• 2004 WL 2621278 (Trial Pleading) Defendant's Original Answer and Affirmative Defenses to Plaintiff's Original Complaint (Jun. 10, 2004)Original Image of this Document (PDF)

• 2004 WL 2621270 (Trial Pleading) Defendant's Original Answer and Affirmative Defenses to Plaintiff's Original Complaint (Jun. 1, 2004)Original Image of this Document (PDF)

• 2004 WL 2621258 (Trial Pleading) Plaintiff's Original Complaint (May 3, 2004)Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.