IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARK A. HANSEN,                          §
                                         §
            Plaintiff,                   §
                                         §
v.                                       §
                                         §      CIVIL ACTION NO. H-05-3437
AON RISK SERVICES OF TEXAS,              §
INC., Individually and d/b/a             §
AON RISK SERVICES,                       §
                                         §
            Defendant.                   §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mark A. Hansen, brings this action against Aon Risk Services of Texas, Inc., for gender discrimination in violation of Chapter 21 of the Texas Labor Code (Texas Commission on Human Rights Act or TCHRA), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  Pending before the court are Defendant Aon Risk Services of Texas, Inc.'s Motion for Summary Judgment (Docket Entry No. 31), Plaintiff's Objections to Defendant's Summary Judgment Evidence (Docket Entry No. 38), Defendant's Objections to Evidence Attached to Plaintiff's Response to Defendant's Motion for Summary Judgment and Motion to Strike Plaintiff's Summary Judgment Evidence (Docket Entry No. 45), and Plaintiff's Motion to Strike Defendant's Summary Judgment Reply Evidence (Docket Entry No. 50).  For the reasons explained below, defendant's motion for summary judgment will be granted in part and denied in part, plaintiff's evidentiary motions will be denied in

part and declared moot in part, and defendant's evidentiary motion will be declared moot.

## I.  **Defendant's Motion for Summary Judgment**

Defendant argues that it is entitled to summary judgment because plaintiff cannot establish a prima facie case of gender discrimination, because defendant had legitimate, nondiscriminatory reasons for its adverse employment decision, and because defendant would have terminated plaintiff regardless of any unlawful motive because of plaintiff's poor performance.[1]  Defendant also argues that it is entitled to summary judgment because plaintiff failed to comply with the procedural prerequisites for any claim that he is attempting to assert under the TCHRA and for the demotion and failure to transfer that he may be attempting to assert under Title VII.[2]  In the alternative, defendant argues that plaintiff's jury demand is not timely.[3]  Asserting that he has not alleged separate causes of action for demotion and failure to transfer but, instead, has alleged only causes of action for discriminatory discharge in violation of Title VII and the TCHRA,[4] plaintiff

---

[1]See Defendant Aon Risk Services of Texas, Inc.'s Motion for Summary Judgment, Docket Entry No. 31, pp. 12-17 (citing inter alia Declaration of Victoria McDonough, Exhibit 3, and Declaration of Donna Parsley, Exhibit 4, attached thereto).

[2]Id. at pp. 6-7.

[3]Id. at pp. 17-18.

[4]See Plaintiff's Response to Defendant Aon Risk Services of Texas, Inc.'s Motion for Summary Judgment, Docket Entry No. 41, p. 1.

argues that defendant's motion for summary judgment should be denied.

**A.    Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>), (quoting <u>Celotex</u>, 106 S.Ct. at 2553-2554).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for

trial.  Id. (citing Celotex, 106 S.Ct. at 2553-2554).  In reviewing
the evidence "the court must draw all reasonable inferences in
favor of the nonmoving party, and it may not make credibility
determinations or weigh the evidence."   Reeves v. Sanderson
Plumbing Products Inc., 120 S.Ct. 2097, 2110 (2000).  Factual
controversies are to be resolved in favor of the nonmovant, "but
only when . . . both parties have submitted evidence of
contradictory facts."  Little, 37 F.3d at 1075.

**B.    TCHRA Claim**

Defendant argues that it is entitled to summary judgment on
plaintiff's TCHRA claim because

> [u]nder Section 21.254 of the Texas Labor Code, the
> plaintiff may bring a civil action within 60 days after
> the TWC [Texas Workforce Commission] issues a right to
> sue letter.  The TWC sent Hansen a right to sue letter on
> May 13, 2005. *See Exhibit 5*.  Under the mailbox rule, he
> should have received the letter approximately 3 days
> later, by May 16, 2005. . . .  However, he filed his
> original complaint 143 days later, on October 6, 2005.
> Therefore, any claims Hansen has under the Texas Labor
> Code are untimely and must be dismissed.[5]

Plaintiff argues that his TCHRA claim is timely because on or
about May 21, 2005, he appealed the TWC's decision to the Equal
Employment Opportunity Commission (EEOC), that the EEOC issued a
Dismissal and Notice of Rights letter on July 8, 2005, and he filed
suit on October 6, 2005, within the sixty-day time limit.[6]

---

[5]See Defendant Aon Risk Services of Texas, Inc.'s Motion for
Summary Judgment, Docket Entry No. 31, p. 7.

[6]Plaintiff's Response to Defendant Aon Risk Services of Texas,
(continued...)

-4-

Defendant replies that plaintiff's novel argument that he appealed the TWC dismissal to the EEOC and that TCHRA filing requirements were tolled while the EEOC reviewed the findings and issued its own right-to-sue letter is without legal support. Citing <u>Vielma v. Eureka Co.</u>, 218 F.3d 458 (5th Cir. 2000), defendant argues that a right-to-sue letter issued by the EEOC is incapable of triggering the sixty-day filing period established by § 21.254 of the Texas Labor Code.  The court agrees.

The undisputed evidence shows that on May 13, 2005, the TWC issued a Dismissal and Notice of Right to File a Civil Action.[7] That notice states in pertinent part

NOTICE OF RIGHT TO FILE A CIVIL ACTION

Pursuant to Sections 21.208, 21.252 and 21.254 of the Texas Labor Code, as amended, this notice is to advise you of your right to bring a private civil action in state court in the above referenced case.  PLEASE BE ADVISED THAT YOU HAVE SIXTY (60) DAYS FROM THE RECEIPT OF THIS NOTICE TO FILE THIS CIVIL ACTION.  (The time limit for filing suit based on a federal claim may be different.)

EEOC REVIEW NOTICE

AS YOUR CHARGE WAS DUAL FILED UNDER TITLE VII OF THE CIVIL RIGHTS ACT/AGE DISCRIMINATION IN EMPLOYMENT ACT/

---

[6](...continued)
Inc.'s Motion for Summary Judgment, Docket Entry No. 41, p. 28 (citing plaintiff's First Amended Complaint, Docket Entry No. 15, ¶ 22, Exhibits C and D attached thereto, and Defendant's Amended Answer and Defenses to Plaintiff's First Amended Complaint, Docket Entry No. 29, ¶ 22).

[7]See Exhibit 5 attached to Docket Entry No. 31.

AMERICANS WITH DISABILITIES ACT, WHICH ARE ENFORCED BY
THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC),
YOU HAVE THE RIGHT TO REQUEST EEOC REVIEW OF THIS FINAL
DECISION ON YOUR CASE.   TO SECURE A REVIEW, YOU MUST
REQUEST IT IN WRITING WITHIN FIFTEEN (15) DAYS OF THE
RECEIPT OF THIS NOTICE.   YOUR REQUEST SHOULD BE SENT TO
THE U.S. EQUAL OPPORTUNITY COMMISSION OFFICE AS
APPROPRIATE.[8]

On or about May 21, 2005, plaintiff sought EEOC review; on July 8,

2005, the EEOC issued a Dismissal and Notice of Rights;[9] and on

October 6, 2005, plaintiff filed this action.[10]

Texas law provides that "within 60 days after the date a

notice of the right to file a civil action is received, the

complainant may bring a civil action against the respondent." Tex.

Lab. Code § 21.254.   Although neither party has cited a case

directly on point, the court is persuaded that the Fifth Circuit's

holding in Vielma controls the outcome of this dispute.   In that

case the employee filed a charge with the EEOC alleging age and

disability discrimination.   Vielma, 218 F.3d at 461.   Under the

Worksharing Agreement between the EEOC and the TCHR the charge was

also "effectively filed with the TCHR on that date as well."   Id.

The EEOC dismissed the employee's charge and issued a "right to

sue" letter that gave the employee 90 days within which to file

---

[8]Id.

[9]These facts are alleged in plaintiff's First Amended
Complaint, Docket Entry No. 15, ¶ 22 and Exhibits C and D attached
thereto, and admitted in Defendant's Amended Answer and Defenses to
Plaintiff's First Amended Complaint, Docket Entry No. 29, ¶ 22.

[10]See Employment Discrimination Complaint, Docket Entry No. 1.

-6-

suit on her federal law claims.  _Id._  Ninety-one days later the employee filed suit in Texas state court, alleging age and disability discrimination under the TCHRA.  _Id._ at n.1.  The employee also requested a "right to sue" letter from the TWC, which she received shortly after filing her state court suit.  After removing the case to federal court on diversity grounds, the employer obtained summary judgment on grounds that the employee's claims under the TCHRA were time-barred because she did not file suit within 60 days of receiving the EEOC's "right to sue" letter.  _Id._  Noting that the phrase "a notice" in § 21.254 was "undeniably somewhat ambiguous," the Fifth Circuit engaged in a lengthy statutory analysis, following which it concluded that the "notice" referenced in § 21.254 is the "notice of the complainant's right to file a civil action" or "right to sue" letter issued by the TWC under § 21.252 of the TCHRA.  _Id._ at 464.  Holding that the EEOC's "right to sue" letter could not trigger the 60-day filing period under § 21.254, the Fifth Circuit reversed the trial court's grant of summary judgment on the employee's TCHRA claim.  _Id._ at 465-468.

Since plaintiff sought EEOC review on May 21, 2005, he must have received the TCHRA notice of right to sue by that date.  Under _Vielma_ plaintiff's TCHRA claim is time barred because it was filed on October 6, 2005, more than 60 days after plaintiff received notice of his right to sue from the TWC, and because issuance of the EEOC's right-to-sue letter could not have triggered the TCHRA's

60-day filing period.   Since plaintiff has not attempted to distinguish <u>Vielma</u> from the facts of this case, the court concludes that plaintiff's TCHRA claim is time-barred because it was filed more than 60 days after plaintiff received the TCHR's notice of right to sue.

**C.   Title VII Claim**

    1.   <u>Undisputed Facts</u>

Aon provides insurance brokerage and other business and risk management solutions.   On May 3, 2001, Aon hired plaintiff to fill the position of Director, Technical Operations at its Houston Client Services Center.   Plaintiff's unit was responsible for claims, loss control, and data management, and plaintiff reported to John Gabel in the New York City office.   In March of 2002 Aon eliminated plaintiff's position because of company restructuring. In June of 2002 Victoria McDonough, the Managing Director in charge of the Houston Client Services Center, chose plaintiff to serve as Director of the Placement Services Unit (PSU).   In that position plaintiff was responsible for initiating and managing all client service activities related to insurance policy placement and policy renewal.   In May of 2003 McDonough informed plaintiff that he was not meeting the company's performance expectations.  McDonough gave plaintiff three options:  (1) demotion to the position of Assistant Director, Client Services Unit (CSU) with no reduction in pay, (2) search for another job within the company, or (3) termination

-8-

with a separation package.  Plaintiff chose demotion to Assistant Director, CSU, and in June of 2003 became one of three assistant directors all of whom reported to Donna Parsley, the new Director of CSU.  In his new position plaintiff managed 7 employees while the other two assistant directors managed 23 and 16 employees, respectively.  Since plaintiff continued to receive the same salary that he'd received as a director, he earned more money than the other two assistant directors.  On November 4, 2003, McDonough, Parsley, and Ernie Joyner of Aon's Human Resources Department called plaintiff to a meeting at which they discharged him. McDonough offered plaintiff the opportunity to work on a special project at the same salary while he searched for alternate employment.  Plaintiff continued to work for defendant for approximately another month.[11]

2.  Applicable Law

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of race or sex, or to retaliate against an employee for complaining of such discrimination. Plaintiff may establish a claim of discrimination under Title VII either by presenting direct evidence or by using the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 93

---

[11]See Defendant Aon Risk Services of Texas, Inc.'s Motion for Summary Judgment, Docket Entry No. 31, pp. 1-4 (citing inter alia Declaration of Victoria McDonough, Exhibit 3, and Declaration of Donna Parsley, Exhibit 4, attached thereto).

S.Ct. 1817 (1973).  Since plaintiff has failed to offer any direct evidence of discrimination, the Supreme Court's decision in McDonnell Douglas, 93 S.Ct. at 1817, provides the applicable framework for analysis.

To establish a prima facie case of intentional discrimination using the McDonnell Douglas framework plaintiff must show that (1) he belongs to a protected class, (2) he was qualified for his position, (3) the defendant made an adverse employment decision based on his gender, and (4) he was replaced by or treated less favorably than similarly situated employees who were not members of his protected class.  See Abarca v. Metropolitan Transit Authority, 404 F.3d 938, 941 (5th Cir. 2005).  If the plaintiff makes a prima facie showing of discrimination, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its actions.  Id.  If the employer articulates such a reason, the burden shifts to the plaintiff to present evidence showing

> (1)  that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or
>
> (2)  that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative).

Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). In a mixed-motive case the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus.  Id. at 312-313.  "[T]he ultimate burden

-10-

of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S.Ct. 2097, 2106 (2000) (quoting <u>Texas Department of Community Affairs v. Burdine</u>, 101 S.Ct. 1089, 1093 (1981)).  In order to withstand a motion for summary judgment, the plaintiff must reveal a conflict in substantial evidence on the ultimate issue of discrimination. <u>See</u> <u>Sherrod v. American Airlines, Inc.</u>, 132 F.3d 1112, 1122 (5th Cir. 1998).  "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." <u>Id.</u>

   3.   <u>Analysis</u>

       (a)  Plaintiff's <u>Prima Facie</u> Case:  Qualifications

   Defendant does not dispute that plaintiff belongs to a protected class, that plaintiff's discharge constitutes an adverse employment action, or that plaintiff was replaced by someone outside of his protected class.  Instead, defendant argues that plaintiff is unable to establish a <u>prima facie</u> case of employment discrimination because he is unable to present evidence capable of showing that he was qualified for the Assistant Director of CSU position from which he was discharged in November of 2003. Defendant argues that

       [p]rior to working at Aon, nearly all of [plaintiff's]
       prior job experience was limited to claims adjusting.
       The position of Director, PSU, from which Aon demoted
       [plaintiff], requires extensive knowledge of and

                                -11-

experience in the insurance industry, strong knowledge of
and experience in ACS operations, and extensive
management and leadership abilities. . . . Similarly,
the Director of Document Production position required
experience with effectively handling a significant volume
of work attributed to the position. . . . Because
[plaintiff] only had claims background and did not or
could not meet these other requirements, he was not
qualified for these positions. Similarly, he did not
meet the requirements for the position of Assistant
Director, CSU, the position he held prior to his
discharge. That position had qualifications similar to
the Director, PSU position. . . . It required more
experience with the insurance brokerage industry than
Hansen had or was willing to learn. Therefore, he cannot
establish the qualifications element of a prima facie
case of unlawful gender discrimination, and summary
judgment for Aon is appropriate.[12]

Defendant's summary judgment evidence shows that plaintiff was

demoted and subsequently discharged because his supervisors became

dissatisfied with his inability to perform the duties of his

assigned positions. McDonough, the director of defendant's Houston

office, explains her decisions to demote and then discharge

plaintiff as follows:

2. . . . I initially hired Mark Hansen to work in
special projects in March 2002. I then placed him
in the position of Director, Client Account
Services (which later became known as Director,
Placement Services Unit (PSU)) in June 2002.

3. As Director, PSU, Hansen was inefficient, unable to
fully perform and learn the tasks required of his
position, and could not adequately fulfill his
leadership duties. He was also the subject of
internal complaints about his performance. . . .

. . .

6. Effective June 2003, I demoted Hansen to the
position of Assistant Director, Client Services

[12]Id. at pp. 8-9.

Unit (CSU).  In this position, his direct super-
visor was Donna Parsley.

. . .

8.   Based on my own experiences and information I
     obtained from Donna Parsley and Tracie Jones,
     Hansen, as Assistant Director, CSU, was still not
     able to adequately perform his job responsibilities
     and the company was unable to assign him duties
     that he could perform within the structure of that
     division.    Parsley informed me that Hansen
     indicated an unwillingness to successfully perform
     the work of his own position and additional duties
     that the company needed him to perform.  Parsley
     further informed me that Hansen was inefficient and
     unable to learn all the tasks required of his
     position. . . .

9.   After discussing with Parsley and David Barnes and
     Ernie Joyner, both of the human resources
     department, and determining that Hansen was mis-
     placed and not able to handle his responsibilities,
     I terminated Hansen in November 2003.  After his
     termination I gave him an opportunity to work at
     least an additional month on a separate project
     while he searched for alternative employment.[13]

Parsley similarly states that on October 30, 2003, she sent an

e-mail "to Victoria McDonough regarding a discussion [she] had with

Hansen regarding his performance and the fact that his workload was

minimal compared to the other assistant directors."[14]

These excerpts from McDonough's and Parsley's declarations

state that McDonough hired plaintiff in March of 2002, that in June

of 2003 McDonough became dissatisfied with plaintiff's performance

---

[13]Declaration of Victoria McDonough, Exhibit 3 attached to
Docket Entry No. 31.

[14]Declaration of Donna Parsley, Exhibit 4 attached to Docket
Entry No. 31, ¶ 2.

and demoted plaintiff to a position that reported to Parsley, and
that five months later McDonough discharged plaintiff based, in
part, on Parsley's report that plaintiff was unable to perform his
duties. Defendant cites plaintiff's inability to perform his
duties as the legitimate, non-discriminatory business reason for
which it demoted and subsequently discharged plaintiff.

The Fifth Circuit has rejected the argument that an employer
can defeat an employee's prima facie case by claiming that
supervisors became dissatisfied with the employee's work. See
Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1505-1506
(5th Cir. 1988). In Bienkowski American Airlines alleged that a
security guard suing under the Age Discrimination in Employment Act
failed to establish that he was qualified because his supervisors
became dissatisfied with his job performance and terminated his
employment. Id. at 1504-1505. The Fifth Circuit explained that to
place a plaintiff's qualifications at issue in both the prima facie
case and the pretext stage of analysis is "an unnecessary
redundancy." Id. at 1505. Instead, the Fifth Circuit held that

> a plaintiff challenging his termination or demotion can
> ordinarily establish a prima facie case of . . .
> discrimination by showing that he continued to possess
> the necessary qualifications for his job at the time of
> the adverse action. The lines of battle may then be
> drawn over the employer's articulated reason for its
> action and whether that reason is a pretext for . . .
> discrimination.

Id. at 1506. See also Medina v. Ramsey Steel Co., 238 F.3d 674,
681 (5th Cir. 2001) (because subjective criteria can be used to

mask discriminatory intent, "an employee must demonstrate that he meets objective . . . criteria at the prima facie case stage, and the issue of whether he meets subjective . . . criteria is dealt with at the later stages of the analysis").

Defendant's summary judgment evidence establishes that plaintiff was employed by defendant for two years before his supervisors became dissatisfied with his performance.  Because defendant determined that plaintiff was sufficiently qualified to work in each of the various positions that he held at the company, and defendant discharged plaintiff only when his performance allegedly became an issue, defendant has not established that plaintiff was not qualified for the position from which he was discharged.  See Bienkowski, 851 F.2d at 1505-1506; Medina, 238 F.3d at 681.

(b)  Defendant's Nondiscriminatory Reason

Defendant argues that it is entitled to summary judgment because plaintiff cannot present evidence capable of establishing that its legitimate reason for discharging him is either not true or is a pretext for gender discrimination.

> Regarding Hansen's unlawful termination claim, Aon also had a legitimate, nondiscriminatory reason for termi-nating him.  Specifically, as shown by Donna Parsley's October 10, 2003 email to McDonough, he had a significantly lighter workload than the other assistant directors and the company was finding it "difficult to carve out enough administrative and report functions within CSU to (1) afford him a full work load and (2) make a positive impact to the AD's duties. . . .  It

was evident that, after several months at a limited role
as Assistant Director, he was still not able to handle
his responsibilities and that he was misplaced. . . .
When Parsley asked him to take on a broader role, he
stated that this was not an option and that it also was
not an option to remain in his current position. . . .
Parsley informed McDonough of these problems including
Hansen's unwillingness to accept a greater role. . . .
Thus his failure to perform adequately, lack of
qualifications, and unwillingness and inability to obtain
a greater workload were all legitimate reasons to
terminate his employment.[15]

Plaintiff responds with his own declaration in which he states
that when he was demoted from the director to the assistant
director position that two women, Tracie Jones and Kim Francis,
already held assistant director positions, and that the duties
assigned to him were duties that were taken away from Jones and
Frances.[16]  Plaintiff states that he had no say in which job duties
he assumed.   Plaintiff also presents evidence that on June 11,
2003, Parsley thanked him for his "great job and great help,"[17] and
that on August 7, 2003, Parsley gave him a mid-year review that was
as good as or better than the mid-year reviews given to his peers,
Francis and Jones.[18]   On October 13, 2003, McDonough met with

---

[15]Defendant Aon Risk Services of Texas, Inc.'s Motion for
Summary Judgment, Docket Entry No. 31, pp. 10-11.

[16]Declaration of Mark A. Hansen attached to Docket Entry
No. 41, p. 4 ¶¶ 13-14.

[17]See Exhibit 1 attached to Parsley Deposition attached to
Docket Entry No. 41.

[18]Plaintiff's Response to Defendant Aon Risk Services of Texas,
Inc.'s Motion for Summary Judgment, Docket Entry No. 41, p. 9
(citing Parsley Deposition attached thereto, pp. 22-32, 40-42 and
Exhibits 2, 3, and 5).

plaintiff and told him Human Resources had called her and expressed
concern that his salary was higher than that of Francis and Jones,
and that could pose a problem because he was a man and Francis and
Jones were women.[19]   Plaintiff  presents  evidence  that  two  weeks
later Parsley met with him to ask if he planned on staying in his
job,  and  if  he  would  be  willing  take  on  additional  duties.
Plaintiff states that he told Parsley that he planned on staying in
his job, that he was willing to take on additional duties, and that
he would do whatever Aon and the directors wanted him to do.[20]

On November 4, 2003, McDonough discharged plaintiff explaining
that Aon was not able to carve out enough administrative work to
make  the  responsibilities  among  the  three  assistant  directors
equitable and that he didn't have an account manager background.
Plaintiff asserts that McDonough did not cite poor job performance
as a reason for his discharge and, in fact, asked him to stay on
for one month to complete a special assignment, and gave him a
couple of days off to think about her offer.[21]  On November 6, 2003,
Parsley called plaintiff at home and told him that when he returned
to work a woman would be sitting at his desk.[22]  Plaintiff argues
that when McDonough took over the Houston Client Services Center

---

[19]Id. (citing Hansen Deposition attached thereto, pp. 194-195).

[20]Id. at p. 10 (citing Parsley Deposition at pp. 59-60, 63-65,
and 70, and Hansen Declaration at p. 4 ¶¶ 15-16).

[21]Id. (citing Hansen Declaration at p. 4 ¶ 17).

[22]Id. at p. 11 (citing Hansen Declaration at p. 5 ¶ 18).

there were four directors who were male but that by the time she discharged him she had already discharged two men and replaced them with women and a third man had resigned.   Plaintiff asserts that after McDonough discharged and replaced him with a woman, six of the seven people who reported directly to her were women and that she had never discharged and replaced a woman with a man.[23]

The summary judgment evidence shows that defendant has little contemporaneous evidence to support the nondiscriminatory reason for which it claims to have discharged plaintiff, and that the evidence defendant does have tends to support plaintiff's version of the facts.   For example, the e-mail that Parsley sent to McDonough on October 30, 2003, regarding the discussion she had with plaintiff about workload distribution shows that plaintiff, in fact, stated that "he would do whatever we [i.e., Parsley and McDonough] determined was best for CSU."[24]  Moreover, Parsley states that "I also asked if he intended to remain in his current position for a while and again he stated, this was not an option.  He said that he had performed so many duties since joining Aon that it really did not matter; he would do whatever was asked of him."[25] Apart from the declarations of McDonough and Parsley defendant

---

[23]Id. (citing McDonough Deposition, pp. 39-40); Plaintiff's Notice of Erratum Re: Plaintiff's Response to Defendant Aon Risk Services of Texas, Inc.'s Motion for Summary Judgment, Docket Entry No. 52.

[24]See Attachment 1 to Parsley Declaration, Exhibit 4 attached to Docket Entry No. 31.

[25]Id.

presents no evidence in support of the reasons for which it claims
to have discharged the plaintiff.   Moreover, plaintiff presents
evidence that he had a good work record, and that contrary to the
statements in McDonough's and Parsley's declarations, that he never
refused to accept a greater workload and, in fact, told them that
he would do whatever they asked him to do.   The conflicts in
evidence created by defendant's assertion that plaintiff's
performance was poor and plaintiff's evidence of a good work
record, defendant's evidence that plaintiff refused to accept a
greater workload and plaintiff's evidence that he agreed to do
whatever was asked of him, and the undisputed evidence created by
McDonough's record of replacing men with women create genuine
issues of material fact that preclude the court from granting
defendant's motion for summary judgment.

## D.   Plaintiff's Jury Demand

Defendant argues that plaintiff's jury demand must be denied
because it was not made in a timely manner.[26]   Citing Rule 39 of the
Federal Rules of Civil Procedure defendant argues that plaintiff's
jury demand is untimely because it was not served on February 22,
2006, together with the summons, complaint, order for conference,
and disclosure of interested parties but, instead, on March 29,

---

[26]Defendant Aon Risk Services of Texas, Inc.'s Motion for
Summary Judgment, Docket Entry No. 31, p. 17.

-19-

2006, with his motion for leave to file an amended complaint.[27] Plaintiff responds that the court decided this issue when it granted his motion for leave to amend and accepted his amended complaint for filing because the amended complaint included a jury demand.[28]  The court agrees.

Federal Rule of Civil Procedure 38(b) provides that a party may make a jury demand by "serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to the issue . . . ."  Defendant did not raise this issue in opposition to plaintiff's motion for leave to amend. Since plaintiff's amended complaint contained a jury demand, the court concludes that this issue was resolved when it granted plaintiff's motion for leave to amend.[29]

## II.  Ancillary Motions

Also pending before the court are a number of ancillary motions challenging the admissibility of summary judgment evidence.

## A.  Plaintiff's Objections to Defendant's Summary Judgment Evidence (Docket Entry No. 38)

---

[27]Id.

[28]Plaintiff's Response to Defendant Aon Risk Services of Texas, Inc.'s Motion for Summary Judgment, Docket Entry No. 41, pp. 28-29.

[29]See Order granting plaintiff leave to file First Amended Complaint, Docket Entry No. 28.

Plaintiff objects to specific portions of the McDonough Declaration and to the attachments thereto as hearsay.  The portions of the McDonough Declaration to which plaintiff expressly objects and the court's rulings on them are:

Plaintiff's objection to ¶ 2, sentences 3 and 4 of the McDonough Declaration is **MOOT** because ¶ 2 has only two sentences.

Plaintiff's objection to ¶ 5, sentence 2 is **MOOT** because the court has not relied on ¶ 5 in ruling on defendant's motion for summary judgment.

Plaintiff's objection to ¶ 8, sentences 1 through 3 is **DENIED** because the information contained in these sentences was not offered as evidence of the truth of the matter stated but, instead, as evidence that these statements were made to McDonough.

Plaintiff's objection to ¶ 8, sentence 4 is **MOOT** because the court has not relied on this sentence in ruling on defendant's motion for summary judgment.

Plaintiff's objection to that portion of the October 30, 2003, e-mail from Parsley to McDonough attached to the McDonough Declaration that refers to "what 'Senior Aon Management' allegedly said to McDonough about Hansen,"[30] is **MOOT** because the court has not relied on this reference in ruling on defendant's motion for summary judgment.

---

[30]Plaintiff's Objections to Defendant's Summary Judgment Evidence, Docket Entry No. 38, p. 1.

**B.  Defendant's Objections to Evidence Attached to Plaintiff's Response to Defendant's Motion for Summary Judgment and Motion to Strike Plaintiff's Summary Judgment Evidence (Docket Entry No. 45)**

Defendant objects to specific portions of plaintiff's declaration as inadmissible for lack of personal knowledge, lack of foundation, lack of probative value, and, occasionally, as hearsay. Because the court has not relied on any of the excerpts from plaintiff's declaration expressly cited by the defendant in ruling on defendant's motion for summary judgment, defendant's objections to plaintiff's declaration are all **MOOT**.

Defendant objects to specific portions of the Declaration of John Gabel as inadmissible for a variety of reasons.  Because the court has not relied on Gabel's Declaration in ruling on defendant's motion for summary judgment, defendant's objections to it are **MOOT**.

Defendant objects to the plaintiff's use of the statement that it made to the TWC as inadmissable because it was prepared under the guidance of an attorney during an investigation in anticipation of litigation.  Because the court has not relied on Aon's statement to the TWC in ruling on defendant's motion for summary judgment, defendant's objections to it are **MOOT.**

**C.  Plaintiff's Motion to Strike Defendant's Summary Judgment Reply Evidence (Docket Entry No. 50)**

On September 1, 2006, defendant filed a 25-page reply to plaintiff's response to its motion for summary judgment.  Attached to the defendant's reply are copies of the entire oral depositions of McDonough and Parsley.  Plaintiff objects to the court's consideration of the full text depositions because defendant did not attach the depositions to its motion for summary judgment.  Since plaintiff attached excerpts from both depositions to his response to defendant's motion for summary judgment, the court is not persuaded that defendant's attachment of the full texts of those depositions is objectionable.  Accordingly, plaintiff's motion to strike the full texts of the McDonough and Parsley depositions will be denied.

### III.  Conclusions and Order

For the reasons explained above, the court concludes that defendant is entitled to summary judgment on plaintiff's TCHRA claim, but is not entitled to summary judgment on plaintiff's Title VII claim.  Accordingly, Defendant Aon Risk Services of Texas, Inc.'s Motion for Summary Judgment (Docket Entry No. 31) is **GRANTED in part** and **DENIED in part**.

For the reasons explained above, Plaintiff's Objections to Defendant's Summary Judgment Evidence (Docket Entry No. 38) is **DENIED in part** and **MOOT in part**.

For the reasons explained above, Defendant's Objections to Evidence Attached to Plaintiff's Response to Defendant's Motion for Summary Judgment and Motion to Strike Plaintiff's Summary Judgment Evidence (Docket Entry No. 45) is **MOOT.**

For the reasons explained above, Plaintiff's Motion to Strike Defendant's Summary Judgment Reply Evidence (Docket Entry No. 50) is **DENIED.**

The Joint Pretrial Order shall be filed by February 5, 2007, and a copy delivered to the court's chambers.  Docket Call shall be held on February 9, 2007, at 4:00 p.m. in Courtroom 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.

**SIGNED** at Houston, Texas, on this 16th day of January, 2007.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-24-